## Barclay's Estate.

*Jurisdiction, O. C.—Decedents' estates—Domicile of decedent—Change of domicile—Evidence—Presumption against change—Probate of will.*

1. A domicile once acquired is presumed to continue until it is shown to have been changed, and where a change of domicile is alleged the burden of proving it rests upon the person making the allegation. To constitute the new domicile two things are indispensable, first, residence in the new locality, and, second, the intention to remain there. Mere absence from a fixed home, however long continued, cannot work the change; until the new one is acquired the old one remains.

2. On an appeal from the probate of a will on the ground that deceased was not a resident of the State at the time of her death, it appeared that deceased died in Canton, Ohio, on November 18, 1915, leaving the testamentary paper in question dated December 13, 1915, with the addenda in her handwriting, "July 1, 1915, Pittsburgh, Pa., 1615 Buena Vista St., N. S." The will named a resident of Pittsburgh as the executor. It further appeared that deceased was born in Ohio, came to Pittsburgh in 1871, and lived there with her husband from that time until his death in 1878; that her husband's will was probated and his estate administered in Allegheny County; that decedent went to Paris in 1880 and lived there until 1904, when she went to New York City and lived until February, 1913; that she then furnished two rooms in a house owned by her in Canton, Ohio, and occupied by her cousin, and boarded with him until her death; that when she purchased the house in question in Canton it was her intention to have the deed made to her cousin but she was advised by counsel that she could as well give it to him by her will; that she was a member of a church in Pittsburgh; that her husband and one child and herself were buried in a cemetery near Pittsburgh; that in previous wills prepared for her in 1908 and 1911 the introductory clauses referred to Pittsburgh as her residence; that her bank account and investments were in Pittsburgh; and that while living in New York, Paris and Canton she had declared to a number of witnesses that she regarded Pittsburgh as her home and her stay in Canton as an experiment, and temporary; and that she made frequent visits to

Pittsburgh while living at the other places named; while the only facts offered to show a change of residence were the purchase of the house in Canton and her living there in furnished rooms until her death, that she had registered on several occasions at the Y. W. C. A. building as residing in Canton, and her name appeared in the Canton directory as a resident. *Held,* the court did not err in finding that decedent was a resident of Pittsburgh at the time of her death, and the will was properly admitted to probate.

Argued Oct. 12, 1917. Appeal, No. 99, Oct. T., 1917, by T. E. Morrisey and her Co-Heirs at Law, from decree of Allegheny Co., June T., 1916, No. 508, dismissing appeal from decision of Register admitting will to probate in the Estate of Violet Irwin Barclay. Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and WALLING, JJ. Affirmed.

Appeal from decree of register admitting will to probate.

The facts appear from the following opinion by OVER, P. J.:

This is an appeal from the decision of the register of wills of this county admitting to probate on December 13, 1915, as the last will of Violet Irwin Barclay, deceased, a testamentary paper written and signed by her, having this addenda also in her handwriting: "July 1, 1915, Pittsburgh, Pa., 1615 Buena Vista St., N. S., Pittsburgh, Pa." She died at Canton, Ohio, on the 18th of November, 1915. The appellant alleges that Canton was her domicile, that the register of wills of this county had no jurisdiction to admit the will to probate, and under the pleadings this question of fact is submitted to this court for adjudication.

The decedent was born and raised near Dalton, Wayne County, Ohio, married Dr. George Barclay, a dentist, and lived with him at Dalton for some years. They came to Pittsburgh in 1871, where they kept house, and the doctor opened offices and practiced dentistry until his death in 1878. His will was probated and his estate ad-

ministered in this county. Mrs. Barclay went to Paris
about 1880 and lived there until 1904, when she went to
New York City and lived there until February, 1913. She
then furnished two rooms in a house owned by her in
Canton, Ohio, occupied by her cousin, George B. Scott,
and boarded with him until her death. Her intention
when she purchased this house was to have the deed made
to her cousin, but being advised by her counsel, George
C. Wilson, Esq., of Pittsburgh, to take the title in her
own name and that she could give the property to him in
her will, she was named as grantee in the deed. In her
will she made the following disposition of this property:
"The home in Canton, Ohio, 800 Fourteenth St., N. W., I
leave to my cousin, George B. Scott, and his wife, Martha
P. Scott, my cousin. I wish my cousin, Mrs. Lois E.
Glover, of Akron, to go there at any time feeling per-
fectly at home." Her name appears in the directory of
the inhabitants of Canton for the years 1913, 1914 and
1915 as residing at No. 800 Fourteenth street, N. W. She
was a member of a church in Pittsburgh and took a letter
to Paris, joined a church there; also in New York City,
and Canton, being a member of the latter church when
she died. Her husband, one child and herself were bur-
ied in a cemetery at Beaver, Pa.

There can be no question that when Dr. Barclay died
his wife's domicile was in this county, and the appellants
offered no evidence as to declarations made by her show-
ing an intention to change this domicile. The appellee,
however, showed conclusively, both by her written and
oral declarations, that she did not intend to change it.
In 1908 when she resided in New York City, her counsel,
Mr. Wilson, prepared a will for her, the introductory
part being as follows: "I, Violet I. Barclay, of Pitts-
burgh, Pennsylvania." In 1909 he prepared another for
her from instructions received from her in New York
City, having the same introductory clause, which he sent
her. In 1911 he prepared another for her in New York
City, having the same introductory clause, she writing

his name in it as executor. When living in New York she had written Mr. Wilson a letter in which she stated she wanted him to act as her executor and he testified: "I had a talk with Mrs. Barclay and I said to Mrs. Barclay, 'Mrs. Barclay, you are in New York now. I live in Pittsburgh, Pennsylvania. Of course I can't act as your executor if your home is in New York,' and she said, 'Oh, my home is in Pittsburgh,' and then in that conversation and in later conversations she oftentimes told me why she said her home was in Pittsburgh. Among the reasons given by Mrs. Barclay were these: She said to me on many occasions that they lived here in Allegheny County and kept house here in Allegheny County and really had no home after they left Allegheny County; that her husband was in business here; that their burial lot was near Pittsburgh in Beaver. She told me that her husband was buried there and that her only child was buried there and of course she would be buried there. She said, 'All the moneys and securities that I have are in Pittsburgh, most of my investments are local to Pittsburgh.' She said, 'My bank account or bank accounts'—she had two accounts—'my bank accounts are in Pittsburgh,' and she said to me several times that her closest friends were in Pittsburgh." He also testified that she talked with him about going to Canton, saying "she would go out and try it but it was an experiment." She later said her stay there was very unsatisfactory. A number of other witnesses also testified to declarations made by her whilst living in New York City, Paris and Canton "that Pittsburgh was her home" and that her living in Canton was an experiment and temporary. She came to Pittsburgh frequently whilst living in New York, Paris and Canton and usually stopped at the Y. W. C. A. building.

In discussing the question of domicile in Mitchell v. United States, 21 Wall. 350, it was said: "A domicile once acquired is presumed to continue until it is shown to have been changed. Where a change of domicile is al-

leged the burden of proving it rests upon the person making the allegation. To constitute the new domicile two things are indispensable: First, residence in the new locality, and, second, the intention to remain there. The change cannot be made except facto et animo. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the animus to change the prior domicile for another. Until the new one is acquired the old one remains." In Price v. Price, 156 Pa. 617, the decedent was a native of West Chester, Chester County, Pennsylvania. It was conceded that he acquired a domicile of choice in Philadelphia and later acquired a domicile of choice in New York City. It was alleged that he abandoned his New York domicile and resumed his domicile of origin. It appeared that he actually returned to West Chester and resided there until he died, leaving a will good in Pennsylvania and not in New York. The jury found that the decedent did not abandon his New York domicile and did not come to West Chester with the intention of making his permanent home in Pennsylvania, and Mr. Chief Justice Sterrett, in affirming the lower court, said that the prior domicile must be presumed to continue "until another sole domicile has been acquired by actual residence coupled with the intention of abandoning the domicile of origin. This change must be animo et facto, and the burden of proof is on the party who asserts the change." In Jacobs on the Law of Domicile, Sec. 125, it is said: "All jurists agree that a change of domicile of whatever grade is a question of act or fact and intention and cannot be accomplished without the concurrence of both," and sec. 122, "A change of domicile is always presumed against."

Then, as here the evidence shows conclusively that Mrs. Barclay's domicile was in this county when her husband died, under the authority of these and other cases,

it seems the burden of proof is on the appellant to show that her domicile was changed to Canton, Ohio.

The only facts tending to show such a change are that she purchased a house in Canton, lived there as a boarder in rooms furnished by her from February, 1913, until her death, had her household effects there, was registered on several occasions at the Y. W. C. A. building as residing in Canton, and her name appears in the Canton directory as a resident.

Any inference as to an intention to change her domicile by the purchase of the house is rebutted by the testimony showing she did not buy it as a home for herself but for her relatives. The other facts only show her residence in Canton and are immaterial, as it appears from the evidence adduced by the appellees that she never had any intention to change her Pittsburgh domicile.

The trial judge finds as a fact that Mrs. Barclay's domicile when she died was in the City of Pittsburgh, Allegheny County, Pennsylvania, and the appeal is therefore dismissed at the costs of appellant and the decision of the register of wills affirmed.

The lower court dismissed the appeal from the decision of the register. T. E. Morrisey and her coheirs at law appealed.

*Error assigned*, among others, was the decree of the court.

*J. A. Wakefield*, with him *J. F. McNaul*, for appellants.—The decedent was a resident of Canton, Ohio, at the time of her death: Hampton v. McConnell, 16 U. S. 234; Chew v. Brumagen, 80 U. S. 497; Hancock National Bank v. Farnum, 176 U. S. 640; Carey's App., 75 Pa. 201; Price v. Price, 156 Pa. 617; Whitney v. Inhabitants, Etc., 94 Mass. 111; Barton v. Irasburgh, 33 Vt. 195; Raymond v. Leishman, 243 Pa. 64.

*M. W. Acheson, Jr.*, of *Sterrett & Acheson*, with him

*Wilson & Evans,* for appellees.—The burden was on appellants to show a change of domicile, animo et facto: Price v. Price, 156 Pa. 617; Mitchell v. United States, 21 Wallace 350.

Domicile being a matter of intention, decedent's declarations are of great evidential value: Chambers v. Prince, 75 Fed. Repr. 176; Eisele v. Oddie, 128 Fed. Repr. 941; Chase v. Chase, 66 N. H. 588; Harberger's Est., 13 Philadelphia 368.

Domicile is not to be inferred from the fact of residence: Bell v. Kennedy, Law Report, 1 H. L. Sc. 307; Barton v. Irasburgh, 33 Vt. 159; Givernaud v. Variel, 97 Atl. Repr. 49.

Where residence away from original home is temporary there is no change of domicile: Malone v. Lindley, 1 Philadelphia 192.

PER CURIAM, January 7, 1918:

The decree of the Orphans' Court is affirmed on the opinion of the learned judge, filed January 12, 1917, dismissing the appeal from the decision of the register of wills admitting to probate the last will and testament of the testatrix.