Commonwealth ex rel. Hoffman, Appellant, *v.* Hoffman.

Argued November 10, 1947. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent).

*Ralph C. Body,* with him *Body, Muth & Rhoda,* for appellant.

*Emanuel Weiss,* for appellee.

OPINION BY DITHRICH, J., January 8, 1948:

Defendant appellee, a resident of Pennsylvania, while serving in the Army of the United States, obtained a decree in divorce in Georgia from appellant, likewise a resident of Pennsylvania, who did not appear per-

sonally or by counsel in the divorce proceeding. After he had been discharged from the army and while on a visit to his parents in Berks County, Pennsylvania, he was taken into custody on a desertion and nonsupport warrant sworn out by the relatrix. After a hearing before Judge HESS in the Court of Quarter Sessions the charge was dismissed, the court holding that the Georgia divorce decree was entitled to full faith and credit in this Commonwealth. The learned court relied solely on the decision of the United States Supreme Court in the highly controversial case of *Williams v. North Carolina,* 317 U. S. 287, 63 S. Ct. 207, which has been the subject of frequent discussion and comment, both editorial and judicial. In so holding, the learned court below was in error, as we shall later endeavor to point out.

Relatrix and defendant were married in Berks County on June 7, 1941, and lived together there until July 7, 1944, when defendant was inducted into the army under the Selective Service Act. On September 27, 1944, he was transferred from his induction center to Fort McPherson in Fulton County, Georgia, where he was stationed until his discharge on June 23, 1946. On January 3, 1946, he instituted divorce proceedings in Fulton County, and on May 28, 1946, the divorce was granted. On June 30, 1946, he remarried in Georgia.

The question here involved is not a new one in this Commonwealth. It had been before our appellate courts before World War II (*Nixon v. Nixon,* 329 Pa. 256, 198 A. 154; *Alburger v. Alburger,* 138 Pa. Superior Ct. 339, 10 A. 2d 888), and has since been before the Court of Quarter Sessions of Luzerne County where it was correctly decided in an opinion by VALENTINE, P. J. See *Commonwealth v. Ormando,* 55 D. & C. 521.

Judge HESS attempts to distinguish the instant case from the *Ormando* case on the ground that the "actions" of Hoffman, although "most of [them] took place *after* his discharge from military service" (emphasis added), bear out his expressed intention of making Georgia his

domicile. In our opinion that is a distinction without a difference. The decisive question is whether he was a domiciliary of Pennsylvania or of Georgia when he obtained his Georgia divorce, and its determination does not depend on his intention, expressed or otherwise. "A domicil of choice is a domicil acquired, through the exercise of his own will, by a person who is legally capable of changing his domicil": Restatement, Conflict of Laws, §15(1). Here, defendant had no choice as to his domicile. He was temporarily stationed at Fort McPherson, Georgia, by army orders and could have been transferred at any time to any other state or sent overseas. True it is that Georgia, Kansas, California, and most other states which have permanent military reservations within their borders, have so amended their divorce laws that any person, who has been a resident of any United States army post or military reservation within the state for a year preceding the filing of the petition, may bring an action for divorce. But that is not a bar to an inquiry into the jurisdictional facts by a court in any other state at the instance of a party who was not personally before the court when the decree of divorce was granted. Restatement, Conflict of Laws, §111(a). Nevada divorces have repeatedly been held subject to collateral attack in this Commonwealth notwithstanding the divorcer has complied with the Nevada requirement as to the length of residence, etc.

Nor do we attach any significance to the fact, as found by the court below and evidently considered by it of some importance, that defendant stated one month after his arrival in Georgia that he intended to make that state his future home. It should not be considered more than an expression of desire on his part, but even though it be considered an expression of intention, " 'Direct expressions . . . of intention may be worth little as evidence. The person who uses them may not know what constitutes a domicile' ": *Dorrance's Estate*, 309 Pa. 151, 168, 163 A. 303. While domicile or a change

thereof is in many cases largely a matter of intention, the acquisition of a domicile of choice requires actual residence in the particular locality, in addition to the intent to remain there. Expressions to the effect that a person desires to acquire a domicile of choice must coincide with an actual removal to the new residence and be accompanied by a manner of living which can leave no doubt that the new abode is his domicile. Defendant never communicated any such intention or desire to his wife or asked her to join him in Georgia. They lived together as man and wife in Pennsylvania in February, 1945, when he was home on ten days' leave and when he next returned on leave in October, 1945. It was then that he broached the subject of divorce. Even if his domiciliary intent was material to the issue here involved, under all the evidence it is apparent that it was not formed until after he had become enamored of the woman who became his second wife. In *Com. ex rel. Meth v. Meth,* 156 Pa. Superior Ct. 632, 637, 41 A. 2d 752, we said, speaking through RENO, J.: "Domicile in good faith in the state granting the decree is an essential jurisdictional fact without which the decree is not required to be given effect outside the state where it was secured. (Citing cases.)"

"The domicile of a soldier or sailor in the military or naval service of his country generally remains unchanged, domicile being neither gained nor lost by being temporarily stationed in the line of duty at a particular place, even for a period of years, . . .": 28 C. J. S. 28, Domicile, §12(g)(1), citing *Nixon v. Nixon,* supra; *Alburger v. Alburger,* supra.

Defendant in the instant case could not acquire a domicile of choice during his period of service in the army. The fact of his residence was under the control of the military authorities; he had no choice in the selection of his residence or the length of time he was to remain at a certain place. He was not capable of accom-

plishing the fact of residence by the exercise of his own free will.

The court below concluded that "the doctrine of Williams v. North Carolina, supra, requires us to recognize the decree of divorce obtained by this defendant in Fulton County, Georgia"; but as clearly and distinctly pointed out in *Com. ex rel. Esenwein v. Esenwein,* 348 Pa. 455, 35 A. 2d 335, by Mr. Justice LINN, in an opinion affirming the dismissal of a petition for revocation of an order of support on the ground of a Nevada divorce (pp. 459-460):

"Our conclusion is not inconsistent with the decision in Williams v. North Carolina, 317 U. S. 287; on page 302 it was said, 'In the first place, we repeat that in this case we must assume that petitioners had a *bona fide* domicil in Nevada, not that the Nevada domicil was a sham. We thus have no question on the present record whether a divorce decree granted by the courts of one state to a resident, as distinguished from a domiciliary, is entitled to full faith and credit in another state. Nor do we reach here the question as to the power of North Carolina to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court, North Carolina finds that no *bona fide* domicil was acquired in Nevada.' The question thus reserved in the Williams case is the one decided by the courts below against the appellant."

And when the *Williams* case was again before the United States Supreme Court (*Williams v. North Carolina,* 325 U. S. 226, 65 S. Ct. 1092), where Nevada's finding of domicile *was* questioned, the court speaking through Mr. Justice FRANKFURTER said, page 227:

"Williams v. North Carolina, 317 U. S. 287, decided an earlier aspect of the controversy. It was there held that a divorce granted by Nevada, on a finding that one spouse was domiciled in Nevada, must be respected in North Carolina, where Nevada's finding of domicil was *not* questioned (emphasis added) . . . The record then

before us did not present the question whether North Carolina had the power 'to refuse full faith and credit to Nevada divorce decrees because, contrary to the findings of the Nevada court, North Carolina finds that no *bona fide* domicil was acquired in Nevada.' Williams v. North Carolina, supra, at 302. This is the precise issue which has emerged after retrial of the cause following our reversal."

At pages 234-235:

"When this case was first here, North Carolina did not challenge the finding of the Nevada court that petitioners had acquired domicils in Nevada. . . . Upon retrial, however, the existence of domicil in Nevada became the decisive issue."

At page 239:

"We conclude that North Carolina was not required to yield her State policy because a Nevada court found that petitioners were domiciled in Nevada when it granted them decrees of divorce. North Carolina was entitled to find, as she did, that they did not acquire domicils in Nevada and that the Nevada court was therefore without power to liberate the petitioners from amenability to the laws of North Carolina governing domestic relations."

And finally when *Com. ex rel. Esenwein v. Esenwein,* supra, was before the United States Supreme Court on certiorari, 325 U. S. 279, 65 S. Ct. 1118, the court again speaking through Mr. Justice FRANKFURTER said:

"This case involves the same problem as that which was considered in Williams v. North Carolina, ante, p. 226. There are minor variations of fact, but the considerations which controlled the result in the Williams case govern this."

Whatever support may have been afforded the opinion of the learned court below by the earlier opinion in *Williams v. North Carolina* has been entirely swept away by the later opinion in that case. And while the United States Supreme Court sharply divided both times that

the *Williams* case was before it when it was called upon to review judgments affirming convictions for bigamous cohabitation, in the *Esenwein* case, where the judgment was for support of an abandoned wife, as in the instant case, the decision was unanimous.

It should be kept in mind that we are not presuming to pass on the question of the marital capacity of defendant in the State of Georgia, where he obtained his divorce, remarried, and presently resides. That question is not before us. The sole question for our determination is whether the Georgia decree relieves defendant of the duty of supporting the spouse from whom the decree of divorce was obtained. On that question our decision is in favor of the deserted wife and against the defendant. As stated by Mr. Justice DOUGLAS in his concurring opinion in the *Esenwein* case, there is ". . . a basic difference between the problem of marital capacity and the problem of support."

Order reversed.