## Burke Estate

Before Sinkler, P. J., Klein, Bolger, Hunter and Lefever, JJ.

*Henry A. Craig* and *Owen F. McLane*, for exceptants.

*Oscar Brown* and *Helene Nathanson*, for contestants.

LEFEVER, J., April 6, 1951.—This case is before the court on the exceptions filed by Marion E. Burke, Eleanor Catherine Burke Rowland and Sarah A. Burke to the opinion of Judge Klein, revoking letters testamen-

tary granted by the Register of Wills of Philadelphia County on the ground that "decedent died a resident of Montgomery County".

Decedent died in the home of Sarah A. Burke, 430 West Fishers Avenue, Philadelphia, on January 1, 1949. She was unmarried and about 75 years old. Decedent's next of kin are the real parties to this controversy, namely: (a) Marion E. Burke, Eleanor Catherine Burke Rowland and Sarah A. Burke, the two daughters and widow of her deceased brother, John Burke, and the residuary legatees under her will dated November 17, 1948, and (b) Arthur Joseph Burke, John J. Burke, Leo F. Burke, Francis Burke and Mary Burke Dichert, who are the four sons and a granddaughter of her deceased brother, Alexander Burke, and the legatees of one half of her residuary estate under the terms of a prior will.

On January 6, 1949, decedent's will was probated before the Register of Wills of Philadelphia County and letters testamentary were granted by him. On May 20, 1949, an appeal from the probate was filed with the register of wills by Leo Burke, John Burke and Arthur J. Burke, challenging the validity of the will on the grounds of "lack of testamentary capacity" and "undue influence". On December 15, 1949, a second appeal from the probate of the will was filed by the Register of Wills of Montgomery County challenging the jurisdiction of the Philadelphia Register of Wills on the ground that "at the time of her death, Mary T. Burke was a resident of Conshohocken, Montgomery County, Pennsylvania". It is conceded that appellants in the first appeal are the real parties in interest in the second appeal.

Testimony was taken before Judge Klein on February 9, 1950, and November 13, 1950. At the request of counsel Judge Klein restricted the testimony in these hearings to the question of decedent's residence at the

time of her death, reserving the question of testamentary capacity and undue influence until such time as the jurisdictional question was determined. Consequently, only the second appeal from the Register of Wills of Philadelphia County is presently at issue before this court.

Decedent lived in Conshohocken all of her life with the exception of about a year in 1945 and 1946. Upon the death of her brother John, in conformity with a promise she had made to him, decedent sold her home and furniture in Conshohocken, and moved into Sarah A. Burke's home in Philadelphia. She stayed there, frequently expressing dislike for Philadelphia, until June 1946, when she returned to Conshohocken.

Her nephew, Arthur Joseph Burke, after a great deal of effort, had arranged for her to room and board with Mr. and Mrs. Dewan, of Conshohocken. She remained there for almost two years. In February 1948, as a result of arrangements again made by Arthur Joseph Burke, decedent moved to the home of her lifetime friend, Margaret Mellon, 1003 Forrest Avenue, Conshohocken. Mrs. Mellon, aged 77 years, lived there with her 84-year-old husband and their two sons (both of whom were separated from their wives). Decedent paid $12 per week for board, room, heat, light and other facilities. The relationship was one of friendship rather than a strictly business transaction.

On December 24, 1948, Dr. Rowland (husband of exceptant, Eleanor Catherine Burke Rowland) and Marion E. Burke called at the Mellon home and transported decedent and certain personal effects to the home of Sarah A. Burke, in Philadelphia. She died there eight days later.

Under section 2(a) of the Fiduciaries Act of June 7, 1917, P. L. 447, and section 4 of the Register of Wills Act of June 7, 1917, P. L. 415, a will shall be probated and letters testamentary granted only by "the register

of wills of the county within which was the family or principal residence of the decedent at the time of his decease. . . ." As stated by the learned hearing judge in the instant case: "The language of these two sections has been construed to mean domicile as opposed to temporary residence: Sims' Estate, 30 Westmoreland 37, 43 (1948)"; see also Gundy's Estate, 37 Berks 37 (1934), and McElroy Estate, 26 Erie 394 (1944).

It is undisputed that decedent's "family or principal residence" was the Mellon home until December 24, 1948. The sole question before this court was her residence or domicile when she died on January 1, 1949. It is the contention of exceptants that decedent left the Mellon home on December 24, 1948, with the intention of abandoning her residence there and establishing a new and permanent residence at the home of Sarah A. Burke in Philadelphia. It is the position of contestants that decedent was merely making a visit to the home of Sarah A. Burke for the holidays pursuant to usual custom and that she had no intention to, nor did she abandon, her residence in Conshohocken.

Exceptants testified that decedent was dissatisfied with her situation in the Mellon home because of unpleasant sanitary conditions; that Mrs. Mellon was too old to take care of decedent after she became ill and bedfast on December 14, 1948, and had requested decedent to move from her home; that decedent both before and after her arrival at Sarah A. Burke's home in Philadelphia expressed her intention to live there for the rest of her life and stated how happy she was at the prospect; that before Dr. Rowland and Marion E. Burke arrived decedent had emptied the drawers of her bureau and laid out underwear, shoes, gift boxes, sheets, pillow cases and other belongings on the bed of her third-floor bedroom for transportation to Philadelphia; that decedent was present when Marion E. Burke packed these effects into four suitcases and

three carry-all bags; that these suitcases and bags were moved with decedent to Philadelphia and constituted all her personal effects except a few summer dresses and her bedroom furniture which decedent had planned to have moved from the Mellon home in the near future; that decedent also took with her a large crucifix and a bag containing her securities, and that she paid her bill for board to the date of her leaving.

Contestants testified that decedent was entirely satisfied with her situation in Mrs. Mellon's home; that decedent had told Mrs. Mellon and Arthur Joseph Burke she planned to visit Sarah A. Burke only for the Christmas holidays; that her last words to Mrs. Mellon as she left her house on December 24, 1948, were, "I'll be seeing you"; that on December 24th she was so ill she was unable to walk unassisted from her temporary bedroom on the second floor to her regular bedroom on the third floor; that decedent was not present when Marion E. Burke packed the suitcases and carry-alls and did not know or realize the extent of her belongings which Marion E. Burke had packed; that not nearly all her belongings were moved on December 24, 1948, because it required three to four carry-all bags to handle the effects which decedent's executors moved from the Mellon home after her death; that decedent had expressed to various of her friends (some of whom so testified at the hearing) her intense dislike for Philadelphia and her intention to live in Conshohocken for the remainder of her life; that decedent had stated to Joseph Mellon on Thursday, December 23, 1948, when he brought her dinner up to her that "she was leaving the next day to go in town to the Burkes for the Christmas holidays, and she would be back after the first of the year"; that decedent did not settle her financial affairs with Mrs. Mellon when she left on December 24, 1948, but owed $42 which was paid to Mrs. Mellon by her executors after her death; that decedent did not

return her house key to Mrs. Mellon, as she would normally have done if moving out, but took the key to the Mellon home with her when she left; that decedent made no arrangements with Mrs. Mellon for disposition of her furniture and other personal effects or otherwise indicated she had any intention of *not* returning to the Mellon home after the Christmas holidays. In substantiation of contestants' testimony, there was introduced the death certificate issued by Dr. Joseph E. Larkin containing certain facts based on information given by Marion E. Burke and signed by her as informant; included therein was the statement that the "Usual Residence of Deceased" was 1003 Forrest Avenue, Conshohocken.

The question before the court resolved itself into one of credibility of the witnesses. If exceptants' testimony be accepted, it would appear that decedent intended to abandon Conshohocken as her residence and to establish a new and permanent residence in Philadelphia. If the testimony produced by contestants is adopted it is manifest that decedent merely intended to visit Philadelphia for the Christmas holidays and had no intention of abandoning Conshohocken as her home or establishing a new "family or principal residence" in Philadelphia.

Judge Klein heard the testimony. He had an opportunity to watch the witnesses, to observe their demeanor in testifying, and to determine which of them was credible. As the Superior Court very recently stated of a master in divorce:

" 'He possesses an advantage not granted to us. He sees the parties and their witnesses face to face and observes their appearance and demeanor as they testify. We are restricted to the cold type of the record from which temperament and personality have been subtracted. Yet the demeanor of witnesses is the very touchstone of credibility; in the absence of reactions

produced by other applicable tests, the appearance and demeanor of witnesses are the litmus by which the presence of truth is revealed' ": Silfies v. Silfies, 168 Pa. Superior Ct. 421, 423 (1951), quoting Smith v. Smith, 157 Pa. Superior Ct. 582, 584 (1945).

"The Trial Judge saw all of these witnesses, and hence is far better able to determine what weight should be given to their testimony than we can possibly be . . .": Philips' Estate, 295 Pa. 349, 356 (1929).

The findings of fact of the hearing judge have the sanctity of the verdict of a jury: Glenn v. Trees et al., 276 Pa. 165, 167 (1923). They are to be accepted in the absence of manifest error on his part or unless they are contrary to the weight of the evidence. As was stated by this court in Kydd Trust, 63 D. & C. 461, 463 (1948):

"The Auditing Judge has made specific and extensive findings of fact upon the many issues raised by the testimony and has supported them with reasons and citations of just what testimony he believed and what he disbelieved. . . . All of the conflicts of testimony have been resolved by him. . . . A careful reading of the testimony clearly supports those findings. Therefore, they must be treated the same as the verdict of a jury and will not be reversed except for clear error: Kenna Estate, 348 Pa. 214."

At best the evidence in the instant case is evenly balanced. Consequently, we are bound to adopt the findings of fact of the learned hearing judge. We conclude, therefore, that decedent at the time of her death had her "family or principal residence" in Montgomery County and the Philadelphia Register of Wills was without jurisdiction.

We are fortified in our conclusion by the well-established rule of law that the domicile of a person is presumed to continue until a new domicile is acquired, and

the burden of proof is on those alleging change of domicile: Barclay's Estate, 259 Pa. 401 (1918); see also Smith v. Smith, 364 Pa. 1, 4 (1950), and cases there cited. "It requires less evidence to prove the continuation of domicile than it does to establish a new domicile": Pusey's Estate, 321 Pa. 248, 265 (1936). To acquire a new domicile there must be not only residence in the new locality but also an intention to remain there permanently and to abandon the old residence: Alburger v. Alburger, 138 Pa. Superior Ct. 339 (1939).

Exceptants have failed to sustain their burden of proving decedent's change of her "family or principal residence". Consequently the exceptions are dismissed.