## Wallace v. Wallace, Appellant.

Argued April 18, 1852. Before Drew, C. J., Stearne, Jones, Bell, Chidsey and Musmanno, JJ.

reargument refused July 24, 1952.

*H. E. Potter*, with him *Frank A. Moorshead, Wm. H. Doerr, Jr., J. P. Hilferty* and *Roland Fleer,* for appellant.

*Wesley H. Caldwell,* with him *Roper & Caldwell* and *Wright, Mauch, Hawes & Spencer,* for appellee.

OPINION BY MR. CHIEF JUSTICE DREW, June 24, 1952:

The marital problems of Gwladys C. Wallace, plaintiff, and James Macauley Wallace, Jr., defendant, have been subjects of litigation since 1945. At the present time, defendant has obtained a decree of divorce in Florida, has remarried and is residing there, while plaintiff has obtained a decree from the Court of Common Pleas of Montgomery County in this Commonwealth, sitting in equity, declaring that defendant's divorce "is without legal force or effect and is not entitled to lawful recognition in the Commonwealth of Pennsylvania" and enjoining defendant from jeopardizing plaintiff's property rights as a result of the Florida divorce. It is this decree from which defendant has appealed.

The parties were married on August 12, 1944, in Philadelphia. Prior to that time both of them had resided in Montgomery County with their respective parents. Immediately after the wedding they went on a short honeymoon before taking up residence in Florida where defendant was assigned as an ensign in the U.S. Navy. They lived in various apartments there until August 26, 1945, when plaintiff left defendant and returned to Pennsylvania. On October 29, 1945, defendant started suit for divorce in Florida, notice of which was properly served on plaintiff. She did not appear there but instead filed this bill in equity to restrain defendant from prosecuting the divorce suit and to prevent his remarrying. At a hearing for a preliminary injunction, defendant appeared specially to question the jurisdiction of the court, asserting that he was domiciled in Florida. That petition was dismissed, and on November 29, 1945, a preliminary

injunction was granted which was, however, declared a nullity and dissolved on January 5, 1949, because plaintiff had failed to post a bond as required by the Act of May 6, 1844, P. L. 564 and Equity Rule 39. In the meantime a final decree of divorce was entered in Florida on March 6, 1946, as a result of plaintiff's failure to enter an appearance there.

With the record in that condition the bill in equity came on for final hearing before the learned court below. That court held that at the time defendant obtained his divorce in Florida he was domiciled in Pennsylvania and that as a result the divorce was of no effect here. It further held that since he had in fact obtained the divorce and remarried the specific relief prayed for could not be granted but that under the general prayer it could enjoin defendant from doing anything in Pennsylvania to affect plaintiff's marital status or her property rights incident to that relationship. A decree was then entered to that effect.

In *Smith v. Smith*, 364 Pa. 1, 70 A. 2d 630, we enunciated the rule that ". . . an injunction may only be granted where the spouse has not established a bona fide domicile in the state in which the divorce is sought." Domicile in turn depends on residence plus the intent to make the place a permanent home: *Dorrance's Estate*, 309 Pa. 151, 165, 163 A. 303. Since there can be no question but that defendant has resided in Florida since August of 1944, the sole issue is whether he had the requisite intent to establish a domicile there.

The Chancellor, apparently relying on his opinion on the petition to dismiss for want of jurisdiction, made no findings of fact on this issue in his adjudication except that defendant was domiciled in Pennsylvania at the time he filed the divorce action in Florida. This, of course, was simply a deduction from the evidence and where the ultimate fact in question is purely

the result of reasoning, this Court is not bound by the finding but is competent to reach its own conclusions: *Smith v. Smith,* supra.

At the outset plaintiff is met with the principle that a decree of divorce of a sister state is prima facie valid and the burden is on the person attacking it to overcome the presumption of validity: *Com. ex rel. Cronhardt v. Cronhardt,* 127 Pa. Superior Ct. 501, 193 A. 484. A review of the record convinces us that plaintiff failed to meet that burden.

The evidence shows that defendant and plaintiff arrived in Florida in August, 1944, and lived in various apartments of their own choosing. From that date on his only residence has been maintained in Florida. Shortly after his arrival there he stated that he liked it there and began thinking of it as his permanent home. He made inquiries into the purchase of a house and the possibilities of obtaining employment there. On September 13, 1945, he filed a formal declaration of intent to make Florida his permanent home. On September 29, 1945, he registered to vote in Florida and ten days later he transferred his bank account there. Suit for divorce was filed October 29, 1945, and thereafter in February of 1946, he transferred his church membership to Florida, and his automobile operator's license in June 1946. Upon his discharge from the Navy he became a member of the Seventh Naval District Organized Reserve located in Florida. He is now a member of the Florida bar but at the present time has been recalled to active duty in the Navy. He still keeps only his Florida residence.

The only evidence which might be construed to support plaintiff's position is that she and defendant made inquiries about the purchase of a farm in Maryland and that his mother managed some of his securities in Pennsylvania under a power of attorney. Certainly

that evidence is of little value compared to the mass of facts showing his intention to maintain his home in Florida. And when those facts are coupled with the presumption of the validity of the Florida divorce and his actual residence in Florida the conclusion is inescapable that defendant had established a bona fide domicile in that state.

The court below placed great reliance on the fact that many of these acts took place some time after he first took up residence in Florida and some did not occur until after the divorce proceedings were instituted. Such an argument reveals a basic misconception of the issue involved. As we stated above, we are here concerned with the question of defendant's intent to make Florida his permanent home. Intent, being purely subjective, must to a large extent be determined by the acts which are manifestations of that intent. However, it does not follow from that that the acts must all occur simultaneously with the formation of the intent. Such a conclusion would be contrary to human nature. One does not move to a new domicile and immediately change church membership, bank account, operator's license, and club memberships. Nor does he immediately select a neighborhood, purchase a home and buy furniture. All of those acts require varying degrees of consideration and as a consequence cannot be done hastily nor simultaneously. However, the fact that these things are done eventually and within a reasonable period of time is evidence that his expressions of intent were bona fide. That is precisely the case here.

In this connection see *Commonwealth ex rel. v. Esenwein,* 348 Pa. 455, 35 A. 2d 335. There the husband went to Nevada, apparently satisfied its residence requirements, received a decree of divorce and immediately left and established his domicile in Ohio. We

held that his act in leaving Nevada immediately after obtaining his divorce belied his previously expressed declaration of intention and consequently he had not been a bona fide domiciliary of Nevada. Here, the converse is true. All of defendant's acts are consistent with his declarations and with nothing else. He has, therefore, proven that his Florida domicile is bona fide.

The lower court also placed great stress on the fact that defendant originally went to Florida under orders of the U. S. Navy, stating in its opinion that "While in the military service the defendant was incapacitated to establish a domicile of choice." That statement is not an accurate representation of the law of this Commonwealth.

It is unquestionably true that a person acting under compulsion cannot acquire a domicile of choice but to apply that rule with inflexible rigidity would prevent anyone whose employment took him to a new jurisdiction from acquiring a domicile there. The correct application of that rule is found in Restatement, Conflict of Laws, §21, Comment c, where it is stated: "A soldier or sailor, if he is ordered to a station to which he must go and live in quarters assigned to him, cannot acquire a domicil there though he lives in the assigned quarters with his family; for he must obey orders and cannot choose to go elsewhere. *If, however, he is allowed to live with his family where he pleases provided it is near enough to his post to enable him to perform his duty, he can acquire a domicil* where he lives." (Italics added.) In *Gearing v. Gearing*, 90 Pa. Superior Ct. 192, a naval officer, who was assigned to Philadelphia and expressed his intention to live there, was held to have established a bona fide domicile in that city. There, Judge LINN, later Mr. Justice LINN of this Court, said (p. 195): " 'Domicile is the place in which, both in fact and intent,

the home of a person is established without any purpose to return to a former home; the place where he lives, in distinction from that where he transacts his business; the place where he chooses to abide, in distinction from that in which he may be for a temporary purpose; the place which he has chosen, in distinction from one to which he may be exiled or sent a prisoner, or, being in the government service, to which he is ordered . . . it is the place which the fact and the intent, combined with each other and with the law, gravitate to center in, as the home.' " Here, defendant, although ordered to duty in Florida, was allowed to live off of the post in a place of his own choosing. Hence, he was free to acquire a domicile there.

The record shows that not only was defendant capable of establishing a domicile in Florida but also that he did in fact establish it there. The Florida divorce decree was, therefore, valid and this bill in equity must be dismissed.

Decree reversed and bill dismissed. Costs to be paid by plaintiff.

———

DISSENTING OPINION BY MR. JUSTICE CHIDSEY:

Appellant filed his divorce action in Florida on October 29, 1945. A preliminary injunction was issued by the Court of Common Pleas of Montgomery County, sitting in equity on November 29, 1945. This preliminary injunction enjoined appellant from: "(a) Prosecuting and proceeding with the conduct and prosecution of the said alleged divorce action instituted by him against plaintiff in the Circuit Court of the Eleventh Judicial Circuit of the State of Florida, in and for Monroe County, In Chancery, Case No. 10-447, or in any other court in said State or any other State. . . (b) Permitting or causing to be permitted by his attorney in his said suit or any other attorney, servant or agent,

any act; conduct or proceeding whatsoever in further-ance or performance of said divorce action . . . (c) Contracting any marriage with any person upon the authority or alleged or pretended authority of any order, adjudication or decree now or hereto issued or granted in said proceeding, or in any other state or jurisdiction, or from doing any act, matter or thing in any foreign State or jurisdiction whatsoever by which the marital status or rights of plaintiff may be ques-tioned, jeopardized, changed, altered or affected in any manner whatsoever. . .".

In absolute and unmitigated defiance of this order, the appellant proceeded with and obtained a Florida divorce on March 6, 1946. More than two and one-half years later, on October 20, 1948, appellant attacked the entry of the preliminary injunction on the ground that no bond had been filed to protect him against the preliminary injunction *which he had already arbitrarily and contemptuously refused to obey.* The chancellor granted such petition to dissolve on January 5, 1949, then, with commendable judicial restraint, allowed appellant to strike off an order taking the bill *pro confesso* and later allowed further latitude to the appel-lant by permitting him to file an answer to the merits beyond the time ordinarily given.

With this procedural background the chancellor filed an adjudication which was confirmed by the court *en banc.* In his opinion for the court *en banc* he said, "We remain convinced that he [appellant] was not sincere in his intentions to establish a Florida domicile (after his military service was terminated) and what he did was to lend color to his right to a Florida divorce."[1] I am equally convinced that the so-called

---

[1] Even if this finding be regarded as a deduction by the lower court, it should not be set aside unless erroneous: *(Andrekanics v. Andrekanics,* 371 Pa. 222, 89 A. 2d 792) and should be declared

objective evidence produced to convey to the chancellor the impression that it was appellant's *bona fide* intention to establish a domicile in Florida was merely a conglomeration of planned self-serving declarations designed for the two-fold purpose of lending support to the Florida proceeding and defeating the plaintiff in this action.

What was the evidence on the question of the domicile of the appellant? At the time of the marriage in August, 1944, plaintiff and defendant were domiciled in Pennsylvania. They were married in Pennsylvania. After the honeymoon to New Jersey they returned to Montgomery County for a few days before they went to Florida. It is also undoubtedly true that defendant went to Florida under *compulsion* of orders from the United States Navy.[2] They lived there together in various apartments, his personal belongings remaining at the residence of his mother in Pennsylvania. Plaintiff left defendant in August, 1945 and as the chancellor found, was "justified in leaving him." Except for some attempted proof of declarations by the defendant that he wanted to make Florida his residence, he did nothing to effectuate that desire. Although he gave some testimony about looking for a permanent home, he wrote his mother, " '. . . We almost bought a house but decided the cost too high and the value ready for a sudden drop with the conclusion of the war.'. . .". The

erroneous only where *relevant* evidence compels a contrary view. I find this statement of the lower court a true appraisal of the actual situation.

[2] The majority dismisses the effect of this compulsion by stating that the rule is not inflexible. I agree that the rule is not rigid, for other types of compulsion are expressly excluded: e.g. economic compulsion: Restatement, Conflict of Laws, §21, comment e. But it certainly is a factor to be taken into consideration: See *Commonwealth ex rel. Hoffman v. Hoffman*, 162 Pa. Superior Ct. 22, 56 A. 2d 362.

appellee here, who was regarded as credible by the chancellor, testified that as a "last resort" for a place to live they decided they might have to buy and stated her husband said they ". . . couldn't buy the place, because the real estate values would go down and that we would be stuck with property on our hands which we didn't want, *because we weren't going to stay there.*" (Emphasis supplied).

After appellee left appellant in August, 1945, in the month previous to filing his suit for divorce he filed a formal declaration to make Florida his home[3] which was necessary for him to register there, and twenty days before filing suit for divorce he transferred his bank account to Florida. It is extremely significant that appellant did nothing more to support his allegation of domicile in the State of Florida until February, 1946 (when he transferred his church membership) after the preliminary injunction was issued on November 29, 1945. From that time on it must be admitted appellant in chronological order secured his divorce in Florida on March 6, 1946, remarried on April 19, 1946, transferred

---

[3] The record shows that this declaration contains the following: "I was formerly a legal resident of Merion Station, Pennsylvania and I resided at 521 Greystone Road. However, I have changed my domicile to and am and have been a bona fide resident of the State of Florida since 22nd day of August, 1944, and I reside at 1203 Newton Street, Key West, Monroe County, Florida, and this statement is to be taken as my declaration of citizenship, actual legal residence and domicile in the State of Florida. (Insert here any pertinent facts, such as sale of property or business, or relinquishment of employment at former domicile, removal of family to new domicile, purchase of home, etc.) Like warm climate, the frienlyness (sic) to Key Westers and enjoy the pace (sic) and quiet here, therefore intend to make Key West my home." It is significant that the only pertinent facts which appellant inserted were being pleased with the climate, friendliness and peace and quiet of Key West.

his automobile license to Florida in June, 1946, and joined the Naval Reserve there.[4]

On the other hand, the plaintiff testified that the defendant complained of the pollen in Key West affecting his sinus condition, did not want to buy a permanent home in Florida because he didn't want to stay there, made numerous inquiries about farms in Maryland and his mother managed his securities which were in Pennsylvania, under a power of attorney given by defendant. Plaintiff also testified that while they were in Florida appellant never spoke about a permanent residence there, never got a driver's license in Florida, never opened a bank account there and belonged to a church in Pennsylvania.

It is true as the majority states that a person in the military service if he is allowed to live with his family *can* acquire a domicile. But the question is whether the appellant *did* acquire a new domicile and the test of this is intent.

To my mind no sufficient evidence appears to sustain appellant's contention that he established a domicile in Florida prior to the institution of the divorce action on October 29, 1945. The majority seems to concede this for it relies heavily on the acts of the appellant after that date and long after he acquired his divorce and justifies such reliance with the statement that "All of defendant's acts are consistent with his declarations and with nothing else." With this statement I take issue. Defendant's acts *were* consistent with something else. They were consistent with a plan to avoid the effect of the injunction. Under such circumstances I would not upset the chancellor's find-

---

[4] Nowhere in the record testimony does it appear that appellant is a member of the Florida Bar. Under the view I take of the case, however, this is immaterial.

ing that ". . . what he did was merely to lend color to his right to a Florida divorce."

Counterbalancing the presumption of the validity of a divorce decree of a sister state (*Commonwealth ex rel. Cronhardt v. Cronhardt*, 127 Pa. Superior Ct. 501, 193 A. 484) there is present in this case the presumption that domicile persists in law, and once established (in Pennsylvania), is presumed to continue until a new one is acquired: *Pusey's Estate*, 321 Pa. 248, 184 A. 844; *Barclay's Estate*, 259 Pa. 401, 103 A. 274. In addition, defendant did go to Florida initially under orders of the United States Navy and despite the fact that this is not conclusive on his intent it is certainly a factor which should be considered.

The effects of a final decree in divorce are far-reaching. Aside from the social aspects, plaintiff is deprived of her right to support and her rights in her husband's property are extinguished. These rights of a Pennsylvania domiciliary are as much the concern of a court of this state as the domestic difficulties of the defendant apparently were to the State of Florida. The court in this Commonwealth attempted to protect these rights but under the majority opinion failed because appellant disregarded the injunction and after the divorce was granted acted so as to lend color to such divorce which, when instituted, lacked any semblance of the jurisdictional touchstone—domicile.

It is impossible for any person to determine at the institution of a divorce suit in another state whether the spouse who filed such action will be willing to stay in such state and perform acts lending color to his or her declared domicile there. But under the majority opinion if the spouse initiating the action in a foreign state is not domiciled there at the time such suit is commenced, he or she may by acts done subsequently to the granting of the divorce support its validity so that

it will be recognized extraterritorily. Thus the defending spouse is forced to appear in the foreign jurisdiction and contest the divorce in order to protect his or her rights. For even an injunction obtained in the state where both spouses are domiciled according to the evidence existing at the time the foreign divorce action is commenced, is of no avail under the majority opinion. Such result should not be given legal sanction.

In a very analogous case, absent the very persuasive factor of the injunction present herein, the Supreme Court of Errors of Connecticut upheld the setting aside of a Nevada divorce: *Rice v. Rice*, 134 Conn. 440, 58 A. 2d 523. There, as here, the controversy concerned a divorce rendered in a foreign state where a husband remarried shortly after obtaining the divorce, opened a joint bank account with his new wife in Nevada, told others he intended to make it his home and applied for a voter's registration. *He never returned to Connecticut.* The Connecticut court found that he had not obtained a *bona fide* domicile in Nevada which it would recognize. This decision was upheld by the Supreme Court in *Rice v. Rice*, 336 U. S. 674.

I would affirm the decree of the lower court and thus thwart the obvious attempt of this appellant to evade an injunction and establish a domicile in another state by acts done subsequent to his contempt of the injunction and the granting of his divorce.