## Pritchard v. Pritchard

*Bozic, Bozic & Thomas,* for petitioner.

*Thomas, Shafer, Walker, Dornhaffer, & Swick,* for respondent.

THOMAS, P. J., February 12, 1968.—The matter is before the court by virtue of a nonsupport petition seeking a support order from a divorced husband.

### BACKGROUND

The parties were initially married August 10, 1947. They were divorced January 18, 1965, in an action brought by the husband, John E. Pritchard, against his wife, Corinne L. Pritchard, in which he alleged indignities. Approximately four months after the divorce, the parties were remarried on May 28, 1965. The remarriage apparently was unsuccessful as on August 30, 1965, John E. Pritchard again filed a divorce action against his wife again alleging indigni-

ties to the person. An answer was filed, a bill of particulars demanded, and a petition for alimony and counsel fees filed. Apparently, after considerable argument and negotiation between counsel for the parties, the wife, Corinne L. Pritchard, filed a divorce action against her husband on March 18, 1966. On March 31, 1966, the parties entered into an agreement providing for custody of the children, continuance of certain insurance benefits for the children, support payments for their three minor children, and a separate agreement for support for the wife in a fixed amount, payable in monthly installments, for 10 years. Contemporaneously with said agreement, the husband executed an installment promissory note with a confession of judgment clause therein, guaranteeing compliance with the support agreement for the wife.

The agreement was subsequent mutually modified in minor respects which are not material to the decision in this case. A divorce was granted by the court on the complaint of the wife on July 1, 1966. On August 15, 1966, the judgment note executed by the husband was entered as a judgment and execution was issued thereon February 28, 1967. The execution apparently proved fruitless, and although there has been no formal return filed in the prothonotary's office, we are advised by counsel that no attachable assets of John E. Pritchard could be found pursuant to the execution writ.

On September 28, 1967, when Corinne L. Pritchard and her counsel learned of the pending marriage of defendant scheduled on or about September 30, 1967, they petitioned the court to grant a rule to show cause why the divorce decree should not be opened. This court refused to grant a rule and dismissed the petition for the reasons hereinafter set forth.

ISSUE

Is a divorced wife, who procured the divorce and who alleges in a nonsupport hearing that a support agreement providing support for herself was based on a fraudulent promise to pay by the husband, entitled to a hearing and support order in quarter sessions court; or, as a corollary thereto, is the divorced wife who procured the divorce entitled to a rule to show cause in common pleas court why the final judgment of divorce should not be opened and vacated because a collateral support agreement entered into between the parties was done so upon the fraudulent representations of the husband that he would pay the same?

Petitioner filed a nonsupport petition under the provisions of The Pennsylvania Civil Procedural Support Law of July 13, 1953, P. L. 431, sec. 1, PS §2043.-31, et seq., on October 20, 1967. On November 14, 1967, a hearing was held thereon with the court finding that the agreement of the parties dated March 31, 1966, made adequate provision for the children and that the same had been faithfully complied with by the father-defendant. The parties were having minor disagreements regarding visitational rights of the children and an appropriate visitational order was entered. However, the court at the particular time did not have adequate time to conduct a hearing or listen to extensive legal arguments regarding the wife's right to support and, accordingly, postponed hearing on the divorced wife's right to support to a later date.

On December 13, 1967, the parties again appeared before the court for the specific purpose of taking testimony with regard to the divorced wife's contention that she was entitled to a support order in quarter sessions court.

Rather than go into a long and protracted hearing,

petitioner placed extensive offers of proof on the record with the permission of the court, to which offers defendant made extensive objection, and the court took the matter under advisement as to whether further hearing would be held or the matter ruled on on the basis of the offers made.

Reading the offers of proof in the light most favorable to petitioner, the basis of this action is an attempt by the divorced wife to continue her former husband's obligation for support to her because of written promises of support set forth in a written agreement of the parties entered into when both were represented by competent counsel prior to the divorce, which promises she contends were fraudulently made on the part of her former husband. This alleged fraud ab initio would be established by statements and conduct of defendant subsequent to the divorce and the fact that he had disposed of his automobile and that other assets were allegedly isolated from execution.[1]

Petitioner is presenting a new and novel theory in the field of divorce and nonsupport law. Neither counsel for the parties nor our research has turned up an analogous case in Pennsylvania.

*The Attack on the Divorce Decree in Common Pleas Court*

When petitioner presented a motion in common pleas court on September 28, 1967, for a rule to show cause, asking that the divorce decree be opened, we refused the same, deeming it to be a collateral attack upon a valid divorce decree and, therefore, not amenable to rehearing or retrial on the basis of the reasons set forth in the petition.

"A decree of divorce is a conclusive adjudication of everything involved therein except the jurisdic-

---

[1] It was stipulated by the parties that defendant had made four or five token payments on the wife's support agreement totalling either $300 or $375.

tional facts upon which it is founded, . . .": Commonwealth, ex rel. McVay v. McVay, 383 Pa. 70, 118 A. 2d 144 (1955).

While fraud may be the basis for setting aside a divorce decree, our courts have strictly limited the type of fraud that will invalidate a divorce decree. Unless a judgment is absolutely void, it cannot be attacked collaterally. If a court which entered a judgment for divorce was vested with jurisdiction to enter said judgment and had jurisdiction over the parties, the judgment can only be attacked by a direct proceeding for that purpose. See cases cited in Law of Marriage and Divorce in Pennsylvania, Freedman, paragraph 723.

Insofar as invalidating divorce decrees in Pennsylvania on the basis of fraud, our courts have drawn a distinction as to whether the fraud is intrinsic or extrinsic. A complete and detailed discussion of these interesting distinctions may be found in Freedman, supra, paragraph 724.

The general rule is that insofar as intrinsic fraud is concerned, a judgment cannot be attacked after the expiration of the term in which it was entered. Extrinsic fraud, not touching a matter determined at the trial, and indeed constituting a means of collusion to prevent a fair trial, is not concluded by the judgment or the term and may be subject to attack at any subsequent time. A definition of "extrinsic fraud" is set forth in Willetts v. Willetts, 96 Pa. Superior Ct. 198 (1929). This case arose by virtue of a petition to vacate a divorce decree on the ground that neither party was then a resident of Pennsylvania and at the time the suit was instituted, they committed perjury for the purpose of securing a divorce. The court held that this conduct on the part of the parties was basic to the jurisdiction of the court and constituted extrinsic fraud which warranted the setting aside of

the divorce decree. The court defined extrinsic fraud as follows:

"By the expression extrinsic or collateral fraud, is meant some act of conduct of the *prevailing* party which has prevented a fair submission of the controversy". (Italics supplied.)

Intrinsic fraud is evidenced by McFadden v. McFadden, 91 Pa. Superior Ct. 301 (1927), in which the court refused to set aside a divorce decree when a petition to vacate the same alleged that perjury had been committed at the time of the hearing upon matters which were in conflict in the contested divorce. In refusing to open or vacate the decree, the court held that the alleged fraud was intrinsic and that the reason for the rule was that there must be an end to litigation at some time and emphasized that the petition alleged only intrinsic fraud and not extrinsic fraud. The court reiterated its prior definition of the type of fraud that warrants the court opening or vacating a divorce decree in the following language:

"In the Powell case we adopted the following definition or description of 'extrinsic or collateral fraud' (stated in U. S. v. Throckmorton, 98 U. S. 61, and in Bleakley v. Barclay, 75 Kansas 462, and approved by our Supreme Court in the McEvoy case), together with the distinction between extrinsic and intrinsic fraud: 'By the expression "extrinsic or collateral fraud" is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy. Among these are the keeping of the defeated party away from court by false promise of compromise, or fraudulently keeping him in ignorance of the action. Another instance is where an attorney without authority pretends to represent a party and corruptly connives at his defeat, or where an attorney has been regularly employed and corruptly sells out his client's interest. The fraud in such case is extrin-

sic or collateral to the question determined by the court. The reason for the rule is that there must be an end to litigation; . . .' "

Numerous other cases are cited in paragraph 724 of Freedman, supra, and without reviewing all of the same, we conclude that if we accepted as true all of the allegations in the offer presented to the court, the same would only constitute *intrinsic* fraud and, accordingly, would afford the court no basis for granting the petition presented in common pleas court to open or vacate the decree of divorce.

What plaintiff is contending is that, as an inducement to withdraw her contest of her husband's divorce action and to proceed with her own divorce action, she extracted from her husband a written agreement of support which she now contends the husband never intended to pay and, accordingly, was tainted with fraud at the time it was signed. She is thus not contending the divorce was fraudulent but that the support agreement that induced her to procure the divorce was fraudulent. This is not an allegation of extrinsic fraud and cannot be the springboard to invalidate an otherwise valid judgment of divorce.

Were the courts to entertain petitions to vacate divorce decrees every time it is aleged that collateral agreements for support or other valuable property rights were fraudulent because the agreement has been subsequently breached, we would open a Pandora's box of litigation where disappointed spouses would be theoretically able to harass the divorced spouse whenever it is contended a promise was broken.

Where the procedural litigation proposed relates solely to marital property rights and does not concern subsisting marital status, the Commonwealth certainly cannot be regarded as an interested party. In these purely personal financial disputes arising between divorced parties, the one procuring the divorce

is barred from attacking the validity of a divorce which she procured. See Romanski Estate, 354 Pa. 261, 47 A. 2d 233 (1946).

Accordingly, believing the allegations of the petition to grant a rule to vacate the judgment of divorce filed in common pleas court, September 28, 1967, to be without basis of law, we reaffirm our previous decision to refuse the rule to show cause.[2]

*The Nonsupport Action in Quarter Sessions Court*

Turning now to the nonsupport proceeding before us in quarter sessions court, we likewise find the same to be without merit. The nonsupport matter came before the court by virtue of a petition under The Pennsylvania Civil Procedural Support Law, supra, 62 PS §2043.31, but this statute being merely a procedural one, we must turn to the nonsupport Act of June 24, 1939, as amended, 18 PS §4733, for decisions involving the problem before us.

While it is true that divorced wives have successfully procured support orders under the aforesaid statute, the basis of these orders rests on the invalidity of a divorce decree, usually one granted in a foreign State. A wife has, accordingly, been awarded support where the court has held the husband's divorce was invalidly procured or a foreign divorce decree was not entitled to full faith and credit in Pennsylvania. See Commonwealth ex rel. Hoffman v. Hoffman, 162 Pa. Superior Ct. 22, 56 A. 2d 362 (1948); Commonwealth v. Berfield, 160 Pa. Superior Ct. 438, 51 A. 2d 523 (1947); Commonwealth v. Kusnirak, 20 Beaver 204, 213 (1959).

These cases, of course, are not analogous to the one here before us, as petitioner in this nonsupport action

---

[2] Although counsel have alluded to this petition as an exhibit, we do not find the same filed with the divorce proceedings at May term, 1966, no. 54. In the event of an appeal, we grant plaintiff's counsel the right to file a copy of the same with the records.

is not contesting the validity of the divorce decree. She argues that the divorce having been induced by a fraudulent representation that support payments would be made to the wife, she gave up a valuable property right in proceeding with the divorce and if said support promise was fraudulent, said fraud supersedes and overrides the long-standing rule that divorce terminates the obligation of the husband to support his wife.

A host of Pennsylvania cases have held that a valid divorce decree terminates the duty of the husband to support his wife: Commonwealth v. Petrosky, 168 Pa. Superior Ct. 232, 77 A. 2d 647 (1951); Commonwealth ex rel. Bortin v. Bortin, 210 Pa. Superior Ct. 355, 234 A. 2d 55 (1967).

Further, it should be noted that the very basis of the support action is found in the first sentence of section 733, which starts out: "If any *husband* . . . being within the limits of this Commonwealth . . . neglects to maintain his wife, etc." Thus, the status of defendant in any nonsupport proceeding involving support for a wife must be that of her husband.

We believe the law binding upon petitioner in this nonsupport proceeding is controlled by the language of the court in Commonwealth ex rel. Bonicker v. Bonicker, 205 Pa. Superior Ct. 191, 208 A. 2d 14 (1965). While this case involved a foreign divorce decree, we think its facts are equally applicable to the case before us. In Bonicker, the wife had procured a support order for herself in the County Court of Philadelphia. The parties were then divorced by a valid Nevada divorce decree, which decree under Nevada law provided support for the wife. Subsequent to the Nevada divorce decree, the husband petitioned the County Court of Philadelphia to vacate the support order as to his wife. The former wife countered by a petition asking the Philadelphia court to give

recognition to the Nevada divorce decree providing for her support, in effect alimony, by a continuation of the previous support order in the County Court of Philadelphia. In granting the husband's petition to vacate the support order in the County Court, the court commented as follows:

"Generally, a valid foreign judgment which imposes a duty to pay money will be enforced by a proper action if it is final, certain in amount, unconditional, and has not been vacated, and if execution has not been superseded in the state which rendered it. Dunn v. Hild, 125 Pa. Superior Ct. 380, 189 A. 746 (1937). Even though the decree has not been reduced to judgment, a foreign decree finally establishing a husband's liability for alimony will be treated in Pennsylvania as a judgment entitled to full faith and credit and will be respected and enforced. Commonwealth ex rel. Branch v. Branch, 175 Pa. Superior Ct. 373, 104 A. 2d 183 (1954); Stewart v. Stewart, 127 Pa. Superior Ct. 567, 193 A. 860 (1937).

"The controversy in this case arises because the wife-appellant chose the wrong form of action to enforce her claim, which error was recognized and referred to obliquely by the lower court. Since she is now divorced, she has no right to support or alimony under Pennsylvania law and the court to which she is now appealing no longer has jurisdiction to award her either. However, her form of remedy to enforce payment of her property settlement or the alimony provision of the Nevada divorce decree, whichever it may later be determined to be, is governed by Pennsylvania procedural law and must follow the same procedure prescribed for enforcing any other judgment or debt by an action in assumpsit. Commonwealth ex rel. McVay v. McVay, 383 Pa. 70, 118 A. 2d 144 (1955), cert. denied, 350 U. S. 995, 76 S. Ct. 544, 100 L. Ed. 860; . . ."

Accordingly, we conclude that even had a hearing been held and petitioner had conclusively proved all of the facts alleged in the offer, we could not have legally entered a support order.[3]

While this decision denies petitioner the right to support, she is not without legal remedy to enforce her contract. She can proceed in accordance with the prescribed Pennsylvania procedure for enforcing a judgment or other debts by an action of assumpsit (1 Standard Pa. Prac., page 462), or she may resort, if the facts warrant, to proceeding under the Uniform Fraudulent Conveyance Act of May 21, 1921, 39 PS §351, et seq., the ancient Statute 13 Elizabeth Ch. 5, 39 PS, appendix page 309, or such other appropriate remedy as the Pennsylvania statutes may allow for the pursuance of assets and the collection of debts justly due.

We do not by this decision intend to encourage the breach of binding agreements between husband and wife entered into in good faith prior to divorce, and can only hope that defendant will regard his contracted obligation as morally binding even though by our decision herein he has achieved a procedural victory.

Accordingly, we enter the following

### ORDER

And now, February 12, 1968, hearing is denied on the nonsupport petition of petitioner and the court refuses to enter a nonsupport order.

Our previous decision of September 28, 1967, refusing to grant a rule to show cause why the judg-

---

[3] It should be noted that in addition to objecting to the offers, defendant contends the offers of proof are not factually correct. The allegations of intended fraud ab initio in the execution of the support agreement are denied and defendant contends that he recognizes his obligation and intends to comply with the agreement.

ment of decree in divorce should not be opened or vacated is reaffirmed, and a copy of this opinion and order is directed to be filed with the divorce proceedings at May term, 1966, no. 54.

Each party to pay his or her own costs.

An exception to this order is noted for plaintiff at May term, 1966, no. 54, and for petitioner at Domestic Relations Division, 1967, no. 157.