## Commonwealth ex rel. McCormack, Appellant, *v.* McCormack.

Argued March 14, 1949. Before HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (RHODES, P. J. and Ross, J., absent).

*Clarence H. Clasper,* with him *Shoemaker & Eynon,* for appellant.

*J. Donald Cook,* for appellee.

OPINION BY DITHRICH, J., July 15, 1949:

Relatrix has appealed from an order of the County Court of Allegheny County modifying a support order so as to make it apply only to a minor child of herself and respondent. The latter obtained a decree in divorce from relatrix in Alabama and then petitioned the court below to terminate the support order insofar as it applied to her.

Since it is well settled in this Commonwealth that a valid divorce decree terminates the duty of a husband to support his wife because of the severance of the marital relationship (*Commonwealth ex rel. v. Parker,* 59 Pa. Superior Ct. 74; *Commonwealth ex rel. Kurniker v. Kurniker,* 96 Pa. Superior Ct. 553; *Commonwealth ex rel. Cronhardt v. Cronhardt,* 127 Pa. Superior Ct. 501, 193 A. 484; *Commonwealth v. Elliott,* 157 Pa. Superior Ct. 619, 43 A. 2d 630), the question for our determination is whether the divorce is valid. The question turns on whether Alabama or Pennsylvania was the domicile of appellee at the time he obtained the decree in divorce. The learned judge of the court below found that he was a domiciliary of Alabama, and not of Pennsylvania, on evidence that, in our opinion, amply supports the finding. It is a mixed question of law and

fact. *Commonwealth ex rel. Grill v. Grill,* 162 Pa. Superior Ct. 244, 57 A. 2d 585.

Most of the facts are not in controversy. Appellee was born, reared, and educated in Alabama. His employment as a radio engineer has required him to reside temporarily in many states, including Pennsylvania, without, however, becoming a permanent resident of any state other than that of his original domicile. He married relatrix in Chevy Chase, Maryland, November 11, 1945; he was then stationed in Washington, D. C., in the U. S. Navy. He had been commissioned a naval officer two days after Pearl Harbor (December 7, 1941), while living in Cedartown, Georgia, across the state line from Alabama. He had been employed there four months. Prior thereto he had been employed at various places in the South, and while in the service he was stationed at various places both within and without the United States. Following his discharge from the service, he joined his wife in Pittsburgh in August, 1946. She had moved there with her parents from their former home in Morgantown, West Virginia, in March of that year. Not being able to secure a satisfactory position in Pittsburgh, he went to Reading, Pennsylvania, where he had obtained employment in the Eastern Radio Corporation. He testified that his wife refused to take their child and join him there. Instead on November 16, 1946, she brought an action against him in Allegheny County for support for herself and child, and on December 9, 1946, the order in question was entered.

On August 22, 1947, appellee filed a complaint in divorce in the Circuit Court of Etowah County, Alabama, alleging desertion for the required statutory period, and on February 4, 1948, the divorce was granted. He swore that he was a resident of Gadsden, Alabama, and that his wife was a nonresident. She was served with notice by registered mail but did not appear in person or by counsel at any stage of the proceeding.

The decree is prima facie valid and the burden was on relatrix of proving by a preponderance of the evidence that the Alabama Court lacked jurisdiction. *Commonwealth ex rel. Cronhardt v. Cronhardt*, supra; *Commonwealth ex rel. Meth v. Meth*, 156 Pa. Superior Ct. 632, 41 A. 2d 752; *Commonwealth ex rel. Barker v. Barker*, 160 Pa. Superior Ct. 263, 50 A. 2d 739. This burden she has failed to meet.

It is conceded that the domicile of origin was established to be in Alabama and "A domicil once established continues until it is superseded by a new domicil": Restatement, Conflict of Laws, §23; *Commonwealth ex rel. Saunders v. Saunders*, 155 Pa. Superior Ct. 393, 38 A. 2d 730. While there is evidence that appellee intended to establish a residence in Reading, Pennsylvania, the intention was contingent upon his family joining him there and upon the permanency of his employment there. There was no present intention of making it his domicile and "For the acquisition of a domicil of choice the intention to make a home must be an intention to make a home at the moment, not to make a home in the future": Restatement, Conflict of Laws, §20.

Appellant urges upon us that in an issue concerning only the maintenance or support of a wife domiciled in Pennsylvania, we are not obliged to accord full faith and credit to a divorce decree of a sister state where there was neither personal service upon nor appearance by the wife. That would unquestionably be true if the wife were able to prove that the sister state had lacked jurisdiction because of the failure of the husband to establish a bona fide domicile in that state. She relies upon our recognition of a difference between the problem of marital capacity and the problem of maintenance and support in *Commonwealth ex rel. Hoffman v. Hoffman*, 162 Pa. Superior Ct. 22, 56 A. 2d 362, and argues that *Commonwealth ex rel. v. Parker*, supra, and *Commonwealth ex rel. Kurniker v. Kurniker*, supra, "must be

qualified to conform with" our decision in the *Hoffman* case. But our holding in that case, that a Georgia divorce decree did not relieve defendant of the duty of supporting his wife domiciled in Pennsylvania, was based on the fact that the decree was obtained while Hoffman, a domiciliary of this State, was serving in Georgia as a soldier in the late war and could not and therefore did not acquire a domicile there.

Nor is this case ruled by *Estin v. Estin,* 334 U. S. 541, 68 S. Ct. 1213. It was there held that the Court of Appeals, the highest court of New York, having decided that since the wife had been granted a decree of separation from her husband in that State and awarded permanent alimony the award was not terminated by the divorce obtained by the husband in Nevada, its decision was binding upon the Supreme Court of the United States "except as it conflicts with the Full Faith and Credit Clause." The Court said, page 549: "The result in this situation is to make the divorce divisible—to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony." But as aptly pointed out by Mr. Justice FRANKFURTER in his dissenting opinion, page 551: "Furthermore, if the respondent had obtained her separate maintenance decree in Pennsylvania—which treats such decrees as terminated by any valid divorce, see Esenwein v. Esenwein, 325 U. S. 279—and had subsequently moved to New York and there brought a suit based on the Pennsylvania decree, it is clear that New York's interest in preventing the respondent from becoming a public charge would not justify refusal to treat the separate maintenance decree as having been terminated. New York would be required to refer to the law of Pennsylvania to determine whether the maintenance decree of that Commonwealth had survived the Nevada divorce, and, *finding that it had not,* the New York courts could not enforce it." (Emphasis added.)

The order is affirmed.