Commonwealth ex rel. McVay *v.* McVay, Appellant.

624

Argued November 10, 1954. Before RHODES, P. J., HIRT, ROSS, WRIGHT, WOODSIDE and ERVIN, JJ. (GUNTHER, J., absent).

*Judd N. Poffinberger, Jr.,* with him *John K. Tabor* and *Kirkpatrick, Pomeroy, Lockhart & Johnson,* for appellant.

*Ruth N. Cooper,* with her *Dane Critchfield* and *Critchfield, Bowman & Cooper,* for appellee.

OPINION BY ROSS, J., March 24, 1955:

This is an appeal from the order of the court below, entered August 18, 1954, refusing to vacate an order of support and to remit arrearages and strike judgment thereon.

On January 4, 1946 Marion C. McVay, appellee, obtained an order of support of $100 a month against appellant, Herbert C. McVay, in the County Court of Allegheny County, which order on July 29, 1947 was reduced to $80 a month.

The parties were married in Pittsburgh on June 1, 1926 and resided there until their separation on October 14, 1945. In November 1946 appellant went to Florida and on February 1, 1947 there instituted a proceeding in divorce. On April 5, 1948 the Florida court held that appellant had not met the 90-day residence requirement before bringing his action and that the equities of the cause were with appellee, and ordered that the complaint be dismissed and the $80-a-month support order be continued.

Appellant left for Nevada on January 16, 1949 and on March 5, 1949 filed a complaint in divorce in the court of Clark County of that state. Appellee was served by publication but she did not appear, and on April 18, 1949 the Nevada court granted appellant an absolute divorce. He then discontinued payments under the support order. His former secretary, Dorothy Hunter, joined him and on April 23, 1949 they were married in Nevada. On January 10, 1950 the couple moved to California, where they are still residing. By agreement of the parties appellant's deposition, incorporated in this record, was taken in California.

On April 14, 1953 the County Court of Allegheny County, upon petition of appellee, ordered the arrearages on the 1946 support order in the amount of

$2,960 reduced to judgment and entered against appellant, and notice given him by registered mail. Appellant obtained a rule to show cause why the judgment should not be vacated and the support order terminated. On August 18, 1954 the court, after hearing, discharged the rule and declared the judgment and support order valid, and this appeal followed.

Determination of this appeal hinges upon the validity or invalidity of the Nevada divorce decree. Appellee, not having appeared in the Nevada proceeding, has not precluded herself from collaterally attacking the decree. *Sherrer v. Sherrer*, 334 U. S. 343, 68 S. Ct. 1087, 92 L. Ed. 1429; *Coe v. Coe*, 334 U. S. 378, 68 S. Ct. 1094, 92 L. Ed. 1451; *Com. ex rel. Grill v. Grill*, 162 Pa. Superior Ct. 244, 57 A. 2d 585; *Collins v. Collins*, 175 Pa. Superior Ct. 214, 103 A. 2d 494.

It is well settled in this Commonwealth that a valid divorce decree, because of the severance of the marital relationship, terminates the duty of a husband to support his wife. *Com. ex rel. v. Parker*, 59 Pa. Superior Ct. 74; *Com. v. Elliott*, 157 Pa. Superior Ct. 619, 43 A. 2d 630; *Com. ex rel. McCormack v. McCormack*, 164 Pa. Superior Ct. 553, 67 A. 2d 603. Patently then, if the Nevada divorce is valid the judgment for arrearages accruing since it was decreed must be vacated, and conversely, if it is invalid there has been no legal termination of the duty of support.

The Nevada court found that "all of the allegations of the complaint are true". One of such allegations was that "plaintiff has been and now is a bona fide and actual resident and domiciliary of the County of Clark, State of Nevada". While a recital in a foreign decree of the jurisdictional facts necessary to its universal validity is not conclusive outside the state of its origin (*Thompson v. Whitman*, 18 Wall. 457, 21 L. Ed. 897), the decree is prima facie valid. *Com. ex*

*rel. Esenwein v. Esenwein,* 348 Pa. 455, 35 A. 2d 335, affirmed 325 U. S. 279, 65 S. Ct. 1118; *Com. ex rel. Achter v. Achter,* 167 Pa. Superior Ct. 603, 76 A. 2d 469. The burden is on the party attacking the decree to show by a preponderance of the evidence that jurisdiction was in fact lacking. *Com. ex rel. Cronhardt v. Cronhardt,* 127 Pa. Superior Ct. 501, 193 A. 484; *Com. ex rel. Meth v. Meth,* 156 Pa. Superior Ct. 632, 41 A. 2d 752, allocatur refused 157 Pa. Superior Ct. xxiv; *Com. v. Petrosky,* 168 Pa. Superior Ct. 232, 77 A. 2d 647. Domicile in good faith in the state granting the divorce decree is an essential jurisdictional fact, and if that ingredient is lacking the decree need not be enforced outside the state where it was secured. Where a party leaves the matrimonial domicile, his conduct in obtaining a divorce by allegedly establishing domicile in another state is properly subject to careful scrutiny, and the determination whether an asserted acquisition of another domicile has actually occurred depends upon whether the totality of the facts indicates the establishment of permanent residence or merely temporary sojourn for the purpose of divorce or to evade an order of support. *Com. ex rel. Meth v. Meth,* supra, 156 Pa. Superior Ct. 632, 41 A. 2d 752; *Davidsen v. Davidsen,* 175 Pa. Superior Ct. 123, 103 A. 2d 296.

Appellant argues that appellee has not sustained her burden of disproving domicile in Nevada for the jurisdictional purpose of divorce. He lists a group of cases, the *Meth* and *Achter* among them, wherein full faith and credit was denied, and points to the fact that in each of them the divorce plaintiff returned to his former home (Pennsylvania in the majority of the cases), emphasizing that he has not done so. While concededly prompt departure from the divorcing state was a strong factor in the determination of these

cases, the fact that it was for the *former home* of the divorce plaintiff is not per se controlling. Appellant remained in Nevada until January 1950, about nine months after the decree was granted, before removing to California.

Appellant's last Pennsylvania employment was as an accountant with a hospital service association at a salary of $350 a month. In February and March 1949 he worked in Nevada as a relief clerk at a hotel at a salary of $10 a day. At this job he "didn't work anything like a week at a time" but only when a relief clerk was needed. During that time he had a job for three days with another company. Thereafter he was an auditor for a hotel at a salary of $350 a month. His final job in Nevada was with a furniture store as an accountant at starting and final salary of $75 and $90 a week. He testified that he would have continued to live in Nevada had he been able to secure a position similar to the one he previously had in Pennsylvania.

From January 1949 to September of that year appellant lived, first alone and then with his present wife, in a room in a private home in Las Vegas. In September they moved to an apartment in that city, which he rented on a month to month basis. He produced rent receipts from both landlords. He maintained a bank account, attended meetings of fraternal organizations, obtained an operator's license for a motor vehicle, had business cards printed and, after his divorce, attended church regularly. In connection with the 1954 deposition he placed in evidence his Nevada operator's license which had expired in June 1951, a business card having reference to an employment he left in December 1949, withholding tax statements furnished him by his several Nevada employers, a copy of a conditional sales contract for furniture, a

receipt for a deposit for electric light service and final bills for electric and telephone services.

Appellant, contending that the court below erred in finding that the above circumstances did not constitute him a domiciliary of Nevada, cites *Smith v. Smith,* 364 Pa. 1, 70 A. 2d 630, and *Wallace v. Wallace,* 371 Pa. 404, 89 A. 2d 769.

In the *Smith* case the wife's bill in equity seeking to enjoin her husband's divorce proceeding in Florida was dismissed on the ground that the husband was a Florida domiciliary. The husband had gone to Florida sometime between May 1945 and June 1946. His divorce action was instituted on July 3, 1948. Prior to filing of the action the husband had purchased a home in Florida for $82,500, had business interests in Florida and in seven other states including Pennsylvania, and spent about half his time on business trips to those states and the balance at his Florida home. Present too were the usual superficial indicia of domiciliary intent, including registration to vote in Florida, automobile operator's license giving the Florida address, joining social and fraternal organizations in Florida, and a declaration of intention to become a permanent resident of that state. The *Smith* case differs from the present one in that Smith resided in Florida at least two years before the divorce action was instituted, had purchased an expensive home prior to that time and still resided in Florida when the bill in equity filed by his wife was determined. These differences are significant.

In the *Wallace* case the parties were married in Pennsylvania in August 1944. They went to live in Florida, where the husband was assigned as a naval officer, and lived in various apartments there until August 1945, when the wife left and returned to Pennsylvania. In October 1945 the husband instituted di-

vorce proceedings and a final decree was entered by the Florida court in March 1946. Upon his discharge from the navy he continued to reside in Florida and became a member of the naval reserve there. He was a member of the Florida bar, but at the time of the action questioning the validity of the divorce had been recalled to active duty in the navy. The Supreme Court held that the husband was domiciled in Florida. We find no similarity between the *Wallace* case and the present one.

Appellant testified that his "primary reason" for going to Nevada was to obtain a divorce and that on the day he arrived he consulted the attorney whom he had previously retained for that purpose. His motive is significant insofar as it is evidence of his mental state relative to making Nevada his permanent dwelling place. A change of domicile must be animo et facto—an intention to make the new place one's abode, coupled with an actual transfer of bodily presence from one place to another.

An almost conclusive criterion of domicile is the animus manendi. There must be the intention to remain. *Lesker Case,* 377 Pa. 411, 105 A. 2d 376. In *Com. v. Petrosky,* 168 Pa. Superior Ct. 232, 77 A. 2d 647, the husband, who had resided in Pennsylvania for many years, went to Indiana and obtained a divorce in that state. In holding the Indiana divorce valid, this Court placed emphasis on the fact that the husband's reason for going to Indiana originally and for returning there after each visit to Philadelphia was his desire to take and keep a better job than was available to him in Philadelphia. In that case the husband had resided in Indiana for four years before he sought a divorce and did not leave the state after the divorce was granted. His reason for removing to Indiana was accorded weight in the determination

of the question of domicile. In this case appellant remained in Nevada about nine months after the decree was granted. Although he testified that his reason for removing to California was that he felt that employment opportunities in his type of work would be more favorable there than in Nevada, he had no position awaiting him in California and did not locate one until about six months after his arrival there.

Appellant argues that although his purpose in going to Nevada was to obtain a divorce he subsequently "sank his roots deeper" there. His actions consisted of marrying his former secretary, furnishing and living with her in an apartment which he rented on a monthly basis, and subscribing for necessary utility services. In our view these activities are just as consistent with an intention to "mark time" in order to give color of validity to a foreign divorce as they are of an intention to remain, and are outweighed in the total factual picture by the evidence outlined above. We agree with the learned court below that no bona fide domicile was in fact established by appellant in Nevada.

Two other questions raised by appellant remain to be considered.

He complains that the arrearages were reduced to judgment without prior notice to him. Even if this action were incorrect, we fail to see how appellant was harmed by it. The matters which he could have raised when his wife petitioned the court below to have the arrearages reduced to judgment were before the court and passed upon by it in this proceeding, which appellant initiated.

Finally he contends that the support order of the Florida court in the sum of $80 a month superseded that of the Pennsylvania court, and that the wife is now barred from asserting any rights under the lat-

ter order. There is no merit in this contention. See *Com. ex rel. Bucciarelli v. Bucciarelli,* 162 Pa. Superior Ct. 582, 60 A. 2d 554.

Order affirmed.