Commonwealth ex rel. McVay *v.* McVay, Appellant.

Argued September 28, 1955. Before STERN, C. J., STEARNE, JONES, MUSMANNO and ARNOLD, JJ.

*Judd N. Poffinberger, Jr.,* with him *John K. Tabor* and *Kirkpatrick, Pomeroy, Lockhart & Johnson,* for appellant.

*Ruth Cooper,* with her *Dane Critchfield,* and *Critchfield, Bowman & Cooper,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, November 14, 1955:

In these proceedings to terminate a support order and vacate a judgment for arrears due thereon, the principal question is the faith and credit to be given to a decree of divorce which was obtained in a Nevada court. We allowed an appeal from the decision of the Superior Court on that question reported in 177 Pa. Superior Ct. 623, 112 A. 2d 649.

The parties were married in Pittsburgh in 1926 and resided there continuously until they separated in 1945. In January, 1946, the wife, Marion C. McVay, obtained

in the County Court of Allegheny County a support order of $100.00 a month, reduced in July, 1947, to $80.00 a month, against her husband, Herbert C. Mc-Vay. In November, 1946, the respondent went to Florida and there, in the following February, instituted proceedings for divorce. In April, 1948, the court dismissed his complaint and at the same time allowed the wife's counterclaim for alimony, awarding her the same sum, $80.00 per month, as had been granted her by the County Court of Allegheny County. On January 16, 1949, respondent went to Las Vegas, Nevada, and on March 5, 1949, filed there a complaint in divorce. Service was made by publication but the wife did not enter an appearance in the action. On April 18, 1949, the Nevada Court granted respondent an absolute divorce. He then discontinued all payments on the support order; he was not in arrears up to that time. On January 10, 1950, he left Nevada and moved to California where he still resides. On April 14, 1953, the County Court of Allegheny County, on the wife's petition, ordered the arrearages of $2,960 then due on the support order reduced to judgment, of which notice was immediately given to respondent in California. He thereupon obtained a rule to show cause why the judgment should not be vacated and the support order terminated. The court, after hearing, discharged the rule; respondent then appealed to the Superior Court which affirmed the order of the County Court.

If the Federal Constitution requires that the Nevada divorce be recognized in this Commonwealth, respondent's obligation to support his wife ceased automatically when the divorce was granted; conversely, if the constitutional mandate of full faith and credit does not compel such recognition the support order continued in force and the judgment for the arrears was properly entered.

A decree of divorce is a conclusive adjudication of everything involved therein except the jurisdictional facts on which it is founded, and domicile, of course, is a jurisdictional fact. The bona fides of the domicile is subject to collateral attack in any other State by the spouse who did not appear in the court where the decree of divorce was granted. The full faith and credit clause of the Constitution requires that prima facie validity be accorded the divorce decree of a sister State, but the presumption of the existence of the jurisdictional prerequisite of domicile is rebuttable, the burden of proof to overcome it resting on the party attacking the decree.

The present question for determination is whether respondent was a bona fide domiciliary of Nevada when he instituted the divorce proceedings in that State. There is no factual dispute over his activities during the period of his residence there; the only issue is in regard to the inferences to be drawn from the facts to which he himself testified. He admitted that his primary reason for moving to Nevada was to obtain a divorce; on the very day of his arrival in Las Vegas he consulted an attorney whom he had previously retained for that purpose, and he started proceedings immediately after the required six weeks' residence. While the motive that impelled him to seek the new domicile is not in any sense conclusive it does constitute an important factor to be taken into consideration in determining whether he really intended to make his home in Nevada. When he came to Las Vegas he took a room in a private dwelling; there he was joined by his former secretary, whom he married five days after his divorce was granted; the wife had claimed in the Florida divorce action that this secretary was the cause of their domestic difficulties. In September the couple moved to an apartment in Las Vegas which he rented on a

month to month basis. To show that he intended to establish a permanent domicile in Nevada and not merely a temporary sojourn for the sole purpose of obtaining a divorce, respondent testified that after his marriage and removal to the new apartment he had a telephone listed under his name; that he signed up for light and power with a public utility; that in October he purchased household furniture with which to furnish the apartment (he took this furniture with him three months later on moving to California); that he established a bank account, attended lodge meetings and church services, obtained a driver's license for the purpose of driving the truck of a furniture company where he was employed, and had business cards printed containing the address of the establishment where he was working at the time. But all such activities are of little significance in connection with the question as to whether he was really intending to establish a home in Nevada. He had been a trained accountant and before going to Nevada had been employed in Pittsburgh as a tabulating supervisor with the West Penn Power Company at a monthly salary of $415. In Las Vegas his first employment was as a relief clerk at a hotel where he received $10. a day compensation but worked only on days when a relief man was needed. During that same period he had a job for three days with another concern, then for three months he was employed as an auditor for a hotel company and for three more months as an accountant at a furniture store. At this last job he received a salary of $90. per week; why he did not continue there does not appear in the testimony. He testified that notwithstanding his making extensive inquiries from both public and private sources he was unable to find permanent employment. He decided that the opportunities would be greater in California than in Nevada; therefore he

moved to Glendale in that State and has remained a resident of California ever since. It may be noted that he did not try to obtain employment in Nevada outside of Las Vegas nor did he have any job awaiting him in California; in fact he did not secure a job there for a period of five or six months, and then only at a slightly lower salary than he had been receiving at the furniture store in Nevada.

From all the facts and circumstances of respondent's residence in Nevada the County Court of Allegheny County concluded that he was not a bona fide domiciliary of that State at the time he instituted his action there in divorce. This was because the superficial indicia of domiciliary intent were outweighed in the total factual picture by the unavoidable inference that, having gone to Nevada for the sole purpose of securing a divorce and marrying his former secretary, respondent undertook to work there at casual and temporary jobs merely while marking what he considered sufficient time to give color to his alleged acquisition of a bona fide domicile. While there is no doubt that, in order to accomplish his purpose, he intended to acquire a domicile, the intention required for the acquisition of a domicile is not to acquire the domicile but to make a home in fact: Restatement, Conflict of Laws, §19. It must be remembered that respondent sought to acquire a domicile in Florida but, patently, not to make a home there; frustrated in Florida he then sought to acquire a domicile in Nevada, but, again quite obviously, not to make that State his home. In our opinion the conclusion reached by the County Court, fortified as it is by the opinion of the Superior Court, was amply justified and should be affirmed.*

---

* In *Commonwealth ex rel. Meth v. Meth*, 156 Pa. Superior Ct. 632, 639, 41 A. 2d 752, 755, 756, Judge RENO said: "Unless the courts are to be reduced to a state of juvenile naivete, they cannot be required to accept self-serving declarations which are wholly at vari-

Respondent contends that the decree of permanent alimony entered by the Florida Court was entitled to full faith and credit in the County Court of Allegheny County and superseded the support order of that court. There are two reasons why this contention fails. One of the provisions of the Florida decree was that jurisdiction of the parties was retained until further order of the court. It is stated in Restatement, Conflict of Laws, §435: "A valid foreign judgment for the payment of money which by the law of the state in which it was rendered is not a final judicial determination of the right to payment will not be enforced." A judgment which is subject to modification by the court which rendered it is not entitled to recognition: 50 C.J.S. 478, §889(3), and cases cited in footnote 38. Therefore the order for alimony issued by the Florida Court was not such a judgment for a sum certain as could properly be entered and enforced in Pennsylvania, and the wife was not required to seek relief under that order but could proceed under the support order in force in this jurisdiction: *Commonwealth ex rel. Bucciarelli v. Bucciarelli,* 162 Pa. Superior Ct. 582, 60 A. 2d 554. The other reason is that there is no conflict between a support order and a decree awarding alimony, and both such orders may run concurrently unless and until a divorce is granted: *Heilbron v. Heilbron,* 158 Pa. 297, 27 A. 967; *Commonwealth v. MacMaster,* 88 Pa. Superior Ct. 37. The Florida Court awarded the wife $80. per month apparently because that was the amount which she had been obtaining

ance with actualities evidenced by the conduct of the party out of whose mouth they came. The burden of proving respondent's state of mind while he was in Nevada was on relatrix, but when her proofs of what he did demonstrate so forcibly what his intentions were, she will not be precluded by his patently flimsy protestations to the contrary."

under the Pennsylvania support order and it was neither intended nor used as a duplication.

A final contention of respondent is that the judgment for the arrearages due on the support order was entered without notice to him in California, he having been informed of it only afterwards by registered letter from the court. The court had obtained jurisdiction over the parties and the proceedings had been pending for several years, and the entry of this judgment represented merely a calculation of the amount of the arrearages due under the support order since the date of the Nevada divorce decree. Respondent was fully aware that the support order was in force and that no payments were made by him after the entry of that decree; he must have known, therefore, that a judgment could be entered against him at any time for such arrears. It is true that the Act of June 19, 1939, P. L. 440, provided that any order for the support of a wife may be altered, repealed, suspended, increased or amended, and the court may, at any time, remit, correct or reduce the amount of any arrearages as the case may warrant; therefore, had the facts warranted, respondent might have presented evidence to establish that the alleged arrearages or some part thereof were not due because of the death or remarraige of the wife, or that the obligation had been discharged by payment or otherwise, or that circumstances had so changed as to justify a reduction of the arrearages already accrued. But whatever defenses might thus have been presented, they were all equally available to respondent in the present proceedings and therefore he has not been in the least prejudiced by the failure to have received advance notice of the entry of the judgment. He has paid nothing on the judgment. His present petition is based solely upon the contention that by reason of his Nevada divorce his obligation to

support his wife automatically ceased and that therefore the judgment entered for arrearages accruing after that date should be vacated; in view of what has heretofore been said, he is not entitled to such relief. The case of *Griffin v. Griffin*, 327 U. S. 220, upon which respondent relies, is clearly distinguishable. The question there involved was whether a judgment for arrears of alimony under a decree entered in New York without preliminary notice to the respondent was entitled to full faith and credit in proceedings to enforce the judgment in the District of Columbia. It was there argued that the judgment did not deprive the respondent of any defenses which he might have been entitled to make and that he could still proceed to establish such defenses, but the court held that the judgment could not be made the basis of suit in another jurisdiction subject to defenses which might be grounds for setting it aside in New York; in other words, that the court in the District of Columbia could not open or vacate the judgment on the basis of any potential defense which might have been asserted in the State of New York. No such problem exists in the present case since we are not dealing here with any proceedings in California to enforce the Pennsylvania judgment but only with proceedings in Pennsylvania itself to determine the validity of the judgment in this Commonwealth where it was entered and where respondent now presents all the reasons for which he seeks to vacate the judgment and terminate the order of support.

The order or judgment of the Superior Court is affirmed at appellant's costs.