Publicker Estate.

Argued April 17, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

404

*Thomas D. McBride,* with him *Dilworth, Paxson, Kalish & Green,* for appellants.

*C. Brewster Rhoads,* with him *Samuel S. Logan, Jr., Federico F. Mauck, Montgomery, McCracken, Walker & Rhoads* and *Wright, Mauck, Hawes & Spencer,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, June 25, 1956:

The sole question involved in this appeal from a decree of the Orphans' Court of Montgomery County is whether the Register of Wills of that county had probate jurisdiction of the will and codicils of Rose Publicker.

The testatrix, widow of Harry Publicker, owner of the highly successful Publicker Industries in Philadelphia, died on May 19, 1955. What was purported to be her last will and testament, dated December 28, 1942, together with codicils thereto, dated November 29, 1944 and April 6, 1945 and republication thereof, dated April 23, 1953, were offered for probate on May 24, 1955 before the Register of Wills of Montgomery County, Pennsylvania, by the executors named therein. A formal caveat and request for certification was filed on June 2, 1955 with the Register of Wills of Montgomery County by the appellant, Elva B. Mangold, a daughter of the testatrix, and Lemuel B. Schofield, Esquire,[1] guardian ad litem for the three minor chil-

---

[1] Mr. Schofield died July 5, 1955 and Gilbert P. High, Esquire, the other appellant herein, was appointed substituted guardian.

dren of Mrs. Mangold. The caveat challenged the instruments offered for probate on the grounds of undue influence, fraud and that the decedent did not have her last family or principal residence in Montgomery County, but in Philadelphia County. After certification of the record to the Orphans' Court of Montgomery County, a hearing was held in July, 1955, which, by agreement of counsel and with the court's approval, was limited solely to the jurisdictional issue; testimony concerning the allegations of fraud and undue influence to abide determination of the question as limited. On December 16, 1955 the court filed an opinion, together with findings of fact and conclusions of law, dismissing the caveat on the jurisdictional ground and entered a decree adjudging that the Register of Wills of Montgomery County had probate jurisdiction. Appellants' exceptions to the decree were subsequently dismissed and from the decree thereupon entered this appeal followed.

Section 301 of the Fiduciaries Act of 1949, Act of April 18, 1949, P. L. 512, 20 PS §320.301, provides, inter alia, that "Letters testamentary or of administration on the estate of a decedent domiciled in the Commonwealth at the time of his death shall be granted only by the register of the county where the decedent had his last family or principal residence.". The words "family or principal residence", adopted from the Fiduciaries Act of June 7, 1917, P. L. 447, Section 2(a), have been construed to mean domicile as opposed to temporary residence: *Obici Estate*, 373 Pa. 567, 570, 97 A. 2d 49. The domicile of a person is the place where he has voluntarily fixed his habitation with a present intention to make it either his permanent home or his home for the indefinite future. To effect a change of domicile there must be a concurrence of the following factors: (1) physical presence in the place

where domicile is alleged to have been acquired, and (2) an intention to make it his home without any fixed or certain purpose to return to his former place of abode: *Dorrance's Estate,* 309 Pa. 151, 163 A. 303.

Decedent, whose formative years were spent in Philadelphia, married Harry Publicker in that city on April 3, 1902. After living for a number of years in Philadelphia and Montgomery County, Mr. and Mrs. Publicker moved on September 26, 1950 to a home on a farm containing approximately 175 acres in Berwyn, Chester County, Pennsylvania. The Publickers' absences from their Berwyn residence from October 5, 1950 to March 15, 1951 covered the period of the husband's last illness and hospitalization in Mt. Sinai Hospital in Philadelphia. Mr. Publicker's will was probated in Chester County and jurisdiction there has never been disputed. Following her husband's death Mrs. Publicker returned to the Berwyn residence where she remained until December of 1951, at which time she travelled to Florida for her customary winter vacation. On December 1, 1951, immediately prior to her departure, she executed a two-year lease on an apartment in the Rittenhouse-Claridge in Philadelphia. Upon her return from Florida in the early spring of 1952, she remained at the apartment for a short period and then from May until October, 1952 when she again returned to Florida, she stayed at the farm in Berwyn.

In the spring of 1953 Mrs. Publicker again resided at the apartment in Philadelphia for a short while, then cancelled the lease, and moved to a home in Haverford, Delaware County, which was occupied by her son, Robert. She stayed there from May 7, 1953 until her return to Florida for the winter season in late October, 1953. Upon her arrival in Philadelphia in the spring of 1954 she spent a little over a month at the Warwick Hotel in Philadelphia. Decedent sold the Berwyn home

in June, 1954 and for the remainder of that summer, with the exception of a two-week sojourn in Atlantic City, she stayed at the Bellevue-Stratford Hotel in Philadelphia. While at the Bellevue-Stratford she looked for a home in the Main Line section of suburban Philadelphia and finally decided upon the Thomas Wynne Apartments in Wynnewood, Montgomery County, Pennsylvania. On September 15, 1954 she executed a one-year lease on a large apartment there consisting of two bedrooms, a living room, dining area, kitchen, foyer and television room. She actually occupied this apartment, completely furnished with her own furniture and belongings, on September 23, 1954. She resided at the Thomas Wynne until the end of October when she again left for her winter vacation in Florida. On her return from Florida on March 18, 1955, she spent several days at her sister's home in Wynnefield, Philadelphia County. By March 23, 1955 the decedent returned to the Thomas Wynne apartment where she remained until March 28, 1955. On that date she rented an efficiency apartment in the Rittenhouse-Claridge in Philadelphia and on the next day sent the following letter to the Thomas Wynne Apartments: "Dear Sirs: Referring to my lease for apartment B-220, I am desirous of giving up this apartment. It is a lovely apartment and I have no complaint whatsoever as far as the apartment is concerned, but, for personal reasons, *I have come to the conclusion that I would be better off locating permanently in Philadelphia. I trust, therefore, that you will do whatever you can regarding getting another tenant. I expect to leave my furniture and some personal belongings in the apartment until you advise me you have found another tenant.* You will want to show the apartment, naturally, and, you may do so, providing, of course, that one of your staff accompanies the prospective tenant. I understand that

this is your policy. I would appreciate your keeping in touch with my secretary, Miss Regina Hayes, at Locust 4-1400, as to your progress in the matter. Thanking you, I am Cordially yours, . . .". [Emphasis supplied].

After examination by her personal physician, Dr. Abraham I. Rubinstone of Philadelphia on April 8, 1955, and at his insistence, she moved to larger quarters at the Warwick Hotel on April 22, 1955. She remained at the Warwick until May 9, 1955, at which time she entered the Mt. Sinai Hospital where she died ten days later.

The hearing judge concluded from the foregoing facts that from the date of her husband's death on March 15, 1951 until September 23, 1954 Mrs. Publicker's family or principal residence was Chester County, Pennsylvania. Although Mrs. Publicker during this period occupied various apartments in Philadelphia and spent every winter in Florida, the court was of opinion that these residences were only of a temporary nature. There was uncontradicted testimony that Mrs. Publicker's purpose in leasing an apartment for two years at the Rittenhouse-Claridge was for the purpose of having an "in town dropping off place". There was also testimony that in the spring and summer of 1954 when Mrs. Publicker stayed at both the Warwick and Bellevue-Stratford Hotels she was actively seeking an apartment in the Wynnewood-Ardmore-Haverford section of Montgomery County and that she "wanted a permanent home, an apartment, out in and around Wynnewood". For the years 1951 to 1954, inclusive, decedent's personal property tax returns were filed in Chester County, Pennsylvania and in 1952 she filed a nonresident affidavit with the Board of Revision of Taxes of Philadelphia in which she asserted her address as Waterloo and Newtown Roads, Berwyn, Pennsylvania. Based upon this uncontradicted testimony as to

decedent's acts and declarations, the court correctly concluded that even after the sale and abandonment of the Berwyn residence in June, 1954, her domicile continued to be Chester County until such time as a new one was acquired: *Obici Estate,* supra.; *Commonwealth ex rel. McCormack v. McCormack,* 164 Pa. Superior Ct. 553, 556, 67 A. 2d 603.

The court further found that on September 23, 1954 Mrs. Publicker moved into the Thomas Wynne Apartments, Montgomery County, Pennsylvania, with the intention of making that her family or principal residence. Again the uncontradicted testimony disclosed that on September 23, 1954 Mrs. Publicker moved to a large housekeeping apartment in Wynnewood, Montgomery County, which was completely furnished with the furniture that had been in her home in Berwyn. All of her personal clothes and belongings, together with her china, glass and silverware, were also moved to this apartment. Mrs. Mackintosh, who had been Mrs. Publicker's housekeeper for a short time at the Bellevue-Stratford Hotel, accompanied her to Wynnewood and was there retained on a salary basis. Mrs. Mackintosh testified that when Mrs. Publicker left for Florida in late 1954, she instructed her ". . . to leave it [the apartment] as nice as possible for her coming back.". On February 8, 1955, while the decedent was in Florida, she testified in a proceeding where domicile was admittedly not in issue, that her home was the Thomas Wynne Apartments, Wynnewood, and that it was her permanent residence. She also advised her secretary in a telephone conversation from Florida to file her 1955 personal property tax return in Montgomery County, not Chester, because her home was now in the Thomas Wynne Apartments in Wynnewood. There was documentary evidence that Mrs. Publicker's 1955 personal property tax was in fact filed in Montgomery

County and a nonresident affidavit was filed in Chester County showing decedent's legal address as Wynnewood. Based upon decedent's acts, conduct and oral declarations before and during her stay at the Wynnewood address, the hearing judge could reasonably conclude that Mrs. Publicker did establish a new domicile in Wynnewood.

Directing our attention next to what occurred subsequent to the foregoing period, as found by the court below Mrs. Publicker moved to Philadelphia on March 28, 1955, staying first at the Rittenhouse-Claridge, then at the Warwick Hotel, and finally went to the Mt. Sinai Hospital where she died on May 19, 1955. The court further found that "At no time during her stay in Philadelphia did Rose Publicker intend to abandon the Thomas Wynne Apartment or adopt any place in Philadelphia as her family or principal residence.". After a careful review of all the facts and circumstances, we are constrained to disagree with this latter finding which was purely an inference, deduction or conclusion from other facts. Where a finding of fact is simply a deduction from other facts reported by the tribunal under review, and the ultimate fact in question is purely the result of reasoning, an appellate court has the power to draw its own inferences and arrive at its own conclusions from the facts as established: *Dorrance's Estate,* supra, at p. 156; *Smith v. Smith,* 364 Pa. 1, 5, 70 A. 2d 630; *Foulke v. Miller,* 381 Pa. 587, 592, 112 A. 2d 124.

The undisputed testimony discloses that about a week prior to Mrs. Publicker's letter to the Thomas Wynne Apartments in which she stated that ". . . for personal reasons, I have come to the conclusion that I would be better off locating permanently in Philadelphia. . . .", she had telephoned the secretary to the manager, Mr. Storms, to ask about subleasing or being re-

leased from her lease. In the course of that conversation she stated, according to Mr. Storms, that while she had no objections to the Wynnewood apartment, ". . . she thought, for personal reasons, that she would be happier, personally, in Philadelphia, being closer to certain friends or relatives. . . .". During this same week she telephoned Dr. Rubinstone, complaining of shortness of breath, and informed him that she would be in to see him soon. On March 28, 1955 decedent moved to a furnished room at the Rittenhouse-Claridge Hotel in Philadelphia. On March 29, 1955, the same day on which she notified the Wynnewood apartment manager by letter of her intention to locate permanently in Philadelphia, she attempted to see Dr. Rubinstone at his office, but arrived too late. She did not visit Dr. Rubinstone again until April 8th,[2] whereupon, after a complete examination, he advised her that her heart was a little weaker and a nurse ought to be with her at all times. When she informed him that there was not sufficient room for a nurse in the present apartment, he advised her to ". . . arrange for a larger apartment, at least for another bedroom, so that the nurse can be with you.". To this remark she responded, "Well, if you think I ought to do it, I had better stay in town, and I will try to get larger quarters, either at the Claridge, or somewhere else.". Shortly thereafter Mrs. Publicker obtained the services of a registered nurse and, on April 22nd, moved with her into two furnished rooms at the Warwick Hotel. Despite the fact that Mrs. Publicker's registration at the Warwick in April, 1955 was for an indefinite stay, she told the assistant manager upon her arrival that she hoped she

---

[2] That Mrs. Publicker did not share the doctor's opinion as to the seriousness of her condition is evidenced by her permitting 11 days to elapse after being in Philadelphia before seeing him.

would not have to stay there too long. She also informed her nurse that her stay at the Warwick was temporary, and that her reason for being there was to be near her doctor.

The court below did not consider Mrs. Publicker's letter as constituting the formation of a present intent to abandon her Montgomery County domicile but as only an intention of locating permanently in Philadelphia at some time in the future. We think it patent that such conclusion is not justified. The court fails to consider or make any reference in its opinion to the decedent's conversation with the representative of the Wynnewood apartment prior to the sending of the letter in which she inquired about being released from her lease, stating that she thought she would be happier personally in Philadelphia because of being closer to friends and relatives. What she said during this conversation *might* be characterized as indicating only an intention to acquire a Philadelphia home in the future. However, *her letter* did not state that she was merely considering or contemplating a residence in Philadelphia but that she had come to the *"conclusion"* of locating permanently in Philadelphia and at the same time expressed her present desire of giving up the apartment.[3] Furthermore, concurrently with this written declaration decedent actually left her domicile in Montgomery County and on the day preceding its abandonment until the time of her death, she was physically present and actually resided in Philadelphia. Accordingly, her intention was carried out by actual removal. Her change of domicile was consummated facto et animo.

---

[3] In a written acknowledgment of the receipt of Mrs. Publicker's letter the Thomas Wynne management stated: ". . . We also extend to you our best wishes for happiness in your new home. . . .".

The court's ultimate conclusion is based upon (1) conversations that Mrs. Publicker had with her doctor prior and subsequent to her removal to Philadelphia, (2) certain testimony of decedent's declarations after her removal, and (3) the fact that she left most of her personal belongings at her Wynnewood apartment. From this the court reasons that Mrs. Publicker's move to Philadelphia was occasioned by her ill health and desire to be near her attending physician, and thus, being for a special purpose, did not import permanence. It is true that ordinarily where a person is absent from a fixed abode for a particular purpose and has no intention of remaining in the new locality longer than is necessary for the accomplishment of that purpose, he does not acquire a new domicile: *Dorrance's Estate,* supra; *Obici Estate,* supra. But in our opinion the record does not support such a conclusion. Mrs. Publicker stated in her letter that she intended to locate permanently in Philadelphia for "personal reasons". One reason may have been a desire to be near her physician but there was also the reason given to the representative of the Thomas Wynne Apartments that she thought she would be happier in Philadelphia because of being closer to certain friends and relatives. However, even if we assume that Mrs. Publicker's move to Philadelphia was prompted solely by a desire to be in close proximity to her doctor, her motive or purpose in changing her domicile would be immaterial if she entertained a real intention to make the new residence her home: Beale, Conflict of Laws, Vol. 1, §22.1, p. 161, citing numerous cases in support of the text.

It cannot be contended that Mrs. Publicker's statement to Dr. Rubinstone that ". . . if you think I ought to do it, I had better stay in town, . . ." evinced an *enforced* stay in Philadelphia. The remark related to her physician's request to secure a larger apartment for

the purpose of accommodating a nurse. Mrs. Publick-er's decision to remain in town was made in the exer-cise of her own free will; the compulsion, if any, was in the acquisition of larger quarters. Nor do her declara-tions after her removal to the Warwick, that she "hoped she would not have to stay there too long", that "her stay was temporary", and that "her reason for being there was to be near her doctor", in any way belie her written declaration that she had decided to locate permanently in Philadelphia. It is the intention at the time of arrival which is important. At such time Mrs. Publicker did all that was essential to establish domi-cile in Philadelphia. The fact, if true, that she may later have acquired doubts about remaining in her new place of abode is not important so long as the subse-quent doubt does not indicate that the intention to make the place the decedent's home never existed: *Gallagher v. Philadelphia Transp. Co.*, 185 F. 2d 543, 546 (3rd Circuit, 1950). At most, the foregoing state-ments were vague and equivocal. The record is de-void of evidence that decedent at any time after her arrival in Philadelphia expressed an intention to re-turn to Montgomery County or locate anywhere other than Philadelphia. When this is considered in con-junction with decedent's written declaration concur-rent with her physical removal, we think the more rea-sonable inference to be drawn from her subsequent oral declarations is that while she intended to locate somewhere in Philadelphia, the Warwick Hotel was not to be her permanent home in that city. Appel-lees contend that neither the Rittenhouse-Claridge nor the Warwick Hotels could be characterized as a princi-pal or family residence and that nothing short of that will qualify as a change of domicile. As previously stated, the term "principal or family residence" is synonymous with domicile and we have found no case

and none has been called to our attention holding that a fixed place of residence within a particular locality is essential to establish domicile. Furthermore, the particular mode of living, whether it be in an apartment or a dwelling house, is in no sense controlling in determining domicile. Where a person resolves to change his residence from one city to another and pursuant to that intention leaves his old home and takes quarters temporarily in a hotel in the new city until such time as he can acquire a suitable dwelling, his domicile is where he is for the time being. See *Winans v. Winans*, 205 Mass. 388, 91 N.E. 394, 396; *King v. King*, 74 N. J. Eq. 824, 71 A. 687 (Court of Errors and Appeals of New Jersey). As pointed out in the latter case, it is impossible to say that one's intention to change from a boarding house to a private dwelling or from one dwelling to another destroys one's domiciliary intent to live in a new city, without assenting to the absurd proposition that if a person intended to change from one unsatisfactory room in his hotel to a better room when vacated, that fact would also defeat his domiciliary intention.

Under the circumstances here presented we do not consider it significant that Mrs. Publicker did not move her furniture and most of her personal belongings to Philadelphia. While the location of personal effects is a factor that may be considered in determining whether one has changed his domicile, that fact is clearly explained in the instant case by Mrs. Publicker's letter to the Thomas Wynne management in which she stated that her possessions were to remain there only until such time as another tenant was obtained. Her rather abrupt removal from the Thomas Wynne and indecision as to the particular place in Philadelphia where she would finally reside could readily account for her temporarily leaving them there. Although she surrendered

her lease of the Wynnewood apartment, she was obligated to pay rental until a new tenant was secured. Obviously it was not practical for Mrs. Publicker to pay charges for storage of her belongings until she was compelled to remove them because of a new tenancy.

The order of the court below is reversed, costs to be paid by the estate.