Commonwealth ex rel. Lorusso *v.* Lorusso, Appellant.

404

Argued March 2, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Solomon Lubin,* for appellant.

*James T. Shea,* with him *Shea & Shea,* for appellee.

OPINION BY WOODSIDE, J., April 16, 1959:

This is an appeal from an order of the Court of Common Pleas of Luzerne County discharging a rule to show cause why an order of support should not be vacated, and the arrearages remitted.

It involves the validity of a Nevada divorce.

Dr. Nicholas Lorusso and his wife, Marguerite, were married July 20, 1946, and separated December 16, 1953. They resided in Wilkes-Barre, Pennsylvania. On March 11, 1954, the doctor was ordered by the Court of Quarter Sessions of Luzerne County to pay for the support of his wife the sum of $120 per month, which was increased in August of that year to $130 per month.

April 1, 1958, the defendant obtained the above rule upon a petition alleging that he was granted an absolute and final decree in divorce from his wife, Marguerite, in Nevada on April 2, 1957, and alleging fur-

ther that for a time prior thereto he was not able to make all the payments due on the support order, because his earnings were insufficient. Marguerite filed an answer challenging the jurisdiction of the Nevada court to enter the decree in divorce. After a hearing before Judge FLANNERY the rule was discharged. This appeal followed.

It is well settled in Pennsylvania that a valid divorce decree terminates the duty of a husband to support his wife. *Commonwealth v. Petrosky,* 168 Pa. Superior Ct. 232, 77 A. 2d 647 (1951) ; *Commonwealth ex rel. McCormack v. McCormack,* 164 Pa. Superior Ct. 553, 67 A. 2d 603 (1949) ; *Commonwealth ex rel. Parker v. Parker,* 59 Pa. Superior Ct. 74 (1915). Accordingly, if the Nevada divorce in question is valid in Pennsylvania, the support order, together with any arrearages that accrued after the divorce was granted, must be vacated. On the other hand, if the Nevada divorce decree is not valid in Pennsylvania, there has been no legal termination of the duty to support.

Article IV, section 1 of the Federal Constitution, known as the full faith and credit clause, places the Pennsylvania courts under a duty to accord prima facia validity to the Nevada decree. *Esenwein v. Commonwealth ex rel. Esenwein,* 325 U. S. 279, 280, 65 S. Ct. 1118 (1945) ; *Williams v. North Carolina,* 317 U. S. 287, 63 S. Ct. 207 (1942). A decree of divorce is a conclusive adjudication of everything involved therein except the jurisdictional facts on which it is founded. *Williams v. North Carolina,* 325 U. S. 226, 232, 65 S. Ct. 1092 (1945) ; *Commonwealth ex rel. McVay v. McVay,* 383 Pa. 70, 73, 118 A. 2d 144 (1955). Domicile is a jurisdictional fact. The bona fides of the domicile of a person granted a divorce in another state is subject to collateral attack in Pennsylvania by a spouse domiciled here who did not appear in the court of the

other state. *Esenwein v. Commonwealth ex rel. Esenwein*, supra; *Commonwealth ex rel. McVay v. McVay*, supra. The full faith and credit clause requires us to assume that the appellant had a bona fide domicile in Nevada. *Williams v. North Carolina*, supra. The burden is on the party attacking the divorce of a sister state to show by a preponderance of the evidence that jurisdiction was in fact lacking. *Commonwealth ex rel. Esenwein v. Esenwein*, supra; *Williams v. North Carolina*, supra, 325 U. S. 226, 233, 65 S. Ct. 1092 (1945); *Commonwealth v. Petrosky*, supra; *Commonwealth ex rel. Meth v. Meth*, 156 Pa. Superior Ct. 632, 41 A. 2d 752 (1945); *Commonwealth ex rel. Cronhardt v. Cronhardt*, 127 Pa. Superior Ct. 501, 193 A. 484 (1937); *Loiacono v. Loiacono et al.*, 179 Pa. Superior Ct. 387, 391, 116 A. 2d 881 (1955).

Domicile involves both the physical presence at a given place, and an intention to make a home there permanently or indefinitely. A change of residence with a present intention to live at the new place permanently or indefinitely constitutes the establishing of a new domicile. *Commonwealth ex rel. Meth v. Meth*, supra; *Commonwealth ex rel. Esenwein v. Esenwein*, 348 Pa. 455, 35 A. 2d 335 (1944), affirmed in 325 U. S. 279, 65 S. Ct. 1118, supra; *Melnick v. Melnick*, 154 Pa. Superior Ct. 481, 36 A. 2d 235 (1944); *Lesker Case*, 377 Pa. 411, 105 A. 2d 376 (1954); *Wallace v. Wallace*, 371 Pa. 404, 89 A. 2d 769 (1952).

The question here is whether the appellee has overcome the presumption that the appellant had a bona fide domicile in Nevada. .

As stated by the hearing judge, there is no dispute about what the defendant did during the period relevant here. .

At the beginning of 1957, the defendant was a medical practitioner in Wilkes-Barre in good standing, a

member of the Luzerne County Medical Society, a staff member of the Wilkes-Barre General Hospital and owner of a property on Park Avenue in Wilkes-Barre where he had lived since he and his wife separated in 1953.

In January 1957, he closed his office and living quarters, gave up his medical practice, and left for Las Vegas, Nevada, arriving there on January 24th. On March 8, 1957 he instituted a divorce action in Clark County, Nevada. His wife was personally served in Wilkes-Barre, Pennsylvania, with notice of the proceedings, but did not appear either in person or by counsel. The divorce was granted April 2, 1957.

Within a month after he arrived in Las Vegas, Doctor Lorusso sought employment in Nevada as a physician. He found employment with the Southern Nevada Memorial Hospital as a physician at a hospital in Overton, Nevada, a small town of 600 population, 65 miles north of Las Vegas. Before he could accept the position it was necessary for him to obtain a certificate to practice medicine in Nevada. After considerable correspondence, he secured the necessary credentials to obtain a temporary certificate. Upon receiving the certificate he started his employment in Overton on May 21, 1957.

In order to obtain a permanent license to practice medicine in Nevada, it was necessary for him to take an examination in five subjects in the basic sciences—pathology, anatomy, physiology, chemistry and bacteriology. As it had been 18 years since he studied these subjects in medical school, he purchased text books and studied for the examinations. During the month of September 1957, he went to Reno, 450 miles away, and took the examinations. He failed to pass pathology and chemistry. This required retaking the examinations in all five subjects. After further study, he again took the examinations on June 3, 1958, and passed all of them.

Shortly before starting his employment in Overton, the appellant attempted to obtain a recommendation from the Luzerne County Medical Society, and was advised he could not get it without first paying his 1957 dues. He thereupon paid them. In March, 1958 he attempted to join the Clark County (Nevada) Medical Society, by obtaining a transfer from the Luzerne County (Pennsylvania) Medical Society, and was told that he would be required to pay his dues to the latter society for 1958, before he could obtain the transfer. He, thereupon, paid his dues for 1958.

In January 1957 he asked for a leave of absence from the Wilkes-Barre General Hospital Staff. Under the rules of the hospital leaves cannot be granted for more than three months at a time. He obtained additional leaves until November 1957 when he resigned.

Since arriving in Nevada in January 1957, the appellant left that State only twice. In September 1957 he flew back to Wilkes-Barre where he remained for about 12 days. At the end of that time he flew back to Nevada, taking with him Mrs. Mary Jane Linso and her 10 year old daughter. He married Mrs. Linso September 21, 1957 in Nevada. The other time he left Nevada was to return to Pennsylvania for the hearing in this case.

He is presently living in a home in Overton, where he is continuing his employment as a physician at the hospital. He has been under contract with the Southern Memorial Hospital continuously since May 21, 1957. His present contract of employment expires June 10, 1959. He is now in his third year as a resident of Nevada.

Since July 1957, defendant has obtained a Nevada driver's license, paid Nevada personal property taxes for the fiscal years 1957-1958 and 1958-1959; registered his automobile and received Nevada license plates;

paid a poll tax and registered to vote there; obtained a listing in the Moapa Valley telephone directory; opened a checking and a savings account in a Las Vegas bank; and joined the Moapa Valley Chamber of Commerce and the Las Vegas Chess Club.

As stated above, domicile involves physical presence in a place plus an intention to live there permanently or indefinitely. The physical presence of the appellant in Nevada is a fact not here in issue, as all of the evidence indicates his presence there. Unlike in *Dorrance's Estate*, 309 Pa. 151, 163 A. 303 (1932) ; *Lesker Case*, supra, 377 Pa. 411, 105 A. 2d 376 (1954) and *Commonwealth ex rel. Harmon v. Harmon*, 172 Pa. Superior Ct. 459, 94 A. 2d 181 (1953), we are not faced with the problem of conflicting testimony concerning the physical presence of the person at the place of alleged domicile.

As the physical presence of the appellant in Nevada is not questioned, we must direct our attention to his intention. Did he intend to reside there permanently or indefinitely, or did he intend to leave Nevada to return to Pennsylvania, or to go to some other state?

Intention is a thought known only to the person who has it. With our limited ability to extract the thoughts of another against his will, we must rely upon what he says his thoughts are and what his acts indicate his thoughts to be. The appellant says when he went to Nevada it was, and thereafter has been, his intention to continue to live there. Although this statement is made under oath, and entitled to some weight, it is a self-serving declaration. It must be followed by acts which are in accordance with the declaration: *Alburger v. Alburger*, 138 Pa. Superior Ct. 339, 344, 10 A. 2d 888 (1940). Therefore, we must look beyond the appellant's statement to his acts in order to determine whether he *intended* to make Nevada his domicile.

It is a fair assumption that the appellant went to Nevada to get a divorce, probably with the expectation, or at least the hope, of thereafter marrying his present wife. He had previously brought a divorce action in Pennsylvania which was not pursued.

It is not for us, however, to pass upon the merits of the divorce. That was done in Nevada, and the Federal Constitution limits our inquiry to the jurisdiction of the court which granted the divorce. It is neither our duty nor our prerogative to direct an inquiry as to where the fault of this domestic dispute lies. *Williams v. North Carolina,* supra, 317 U. S. 287, 301, 63 S. Ct. 207 (1942).

Why the appellant went to Nevada is relevant only in so far as it throws light upon his mental state relative to making Nevada his permanent dwelling place. *Commonwealth ex rel. McVay v. McVay,* 177 Pa. Superior Ct. 623, 630, 112 A. 2d 649 (1955), 383 Pa. 70, 73, 118 A. 2d 144 (1955). It is immaterial that he went there for the purpose of obtaining a divorce, *if,* in fact, his intention was to remain there.

The acts of the appellant related above indicate an intent to remain in Nevada.

How does the appellee think she has met her burden to rebut the presumption of the appellant's domicile in Nevada?

She suggests that the payment by the appellant of his dues to the Luzerne County Medical Society for the years 1957 and 1958, and his failure to immediately resign from the hospital staff indicate an intention on his part to return to Pennsylvania. There are numerous letters in the record on this subject which clearly establish that it was advisable, if not absolutely necessary for the appellant to remain in good standing in these organizations in Pennsylvania until he could become established in Nevada. When he did become es-

tablished there, he severed his connections with the hospital and medical society in Pennsylvania.

She suggests also that appellant's failure to sell or rent his home in Pennsylvania indicates an intention to return to it. The "home" happens to be a doctor's office and one room in which he lived after he and the appellee separated. He says that because of the nature of the property he could not rent it, and that he could not sell it because to do so would have required the appellee's signature to the deed. He says he intends to sell it, if his Nevada divorce is found legal by the Pennsylvania courts. The record indicates considerable bitterness between the parties, and it is evident that he would have difficulty in selling the premises while the appellee is questioning the validity of the divorce. His conduct in all these matters is consistent with an intention to remain in Nevada.

Great emphasis was placed by the court below on a statement contained in a letter written by the appellant to the Luzerne County Medical Association in which he said "My plans are quite indefinite to the present time." This statement cannot be taken out of context, but must be viewed in the light of the surrounding circumstances and his subsequent conduct. The appellant had attempted to practice medicine or obtain a position as a physician in Nevada within a month after he arrived there. In Las Vegas he contacted the Southern Nevada Memorial Hospital which had sub-stations in Overton and Mesquite. The statement concerning his plans was contained in a letter written to the Luzerne Medical Society for the purpose of obtaining credentials which would permit him to practice medicine in Nevada. He was having trouble in obtaining these credentials because his dues were not paid. He certainly could not have obtained a definite commitment from the Nevada Hospital when he

had no right to practice medicine in that State. It goes without saying that at the time he was writing he could not have had definite plans as to where and under what circumstances he would be practicing in the State of Nevada. It is pure speculation to assume that his reference indicated an intention to leave the State of Nevada.

The effect of the testimony relied upon by the appellee, even when placed in the light most favorable to her, was scarcely sufficient to raise a doubt as to where his domicile really was. *Commonwealth ex rel. Cronhardt v. Cronhardt,* supra, 127 Pa. Superior Ct. 501, 509, 510, 193 A. 484 (1937). It does not meet the burden which "rests heavily" upon her. *Commonwealth v. Petrosky,* supra, 168 Pa. Superior Ct. 232, 238, 77 A. 2d 647 (1951); *Harrison v. Harrison,* 183 Pa. Superior Ct. 562, 568, 133 A. 2d 870 (1957).

As stated by the hearing judge, the acts of the appellant here are not in dispute. Where the decision of the court below is based upon facts which are simply deductions from admitted facts, and the ultimate fact is purely the result of reasoning, we are competent to judge of its correctness and are entitled to draw our own conclusions from the facts as reported. *Dorrance's Estate,* 309 Pa. 151, 156, 163 A. 303 (1932).

In the cases relied upon by the court below the person obtaining the divorce left the state in which the divorce was granted. It is a fair inference that a person who resided in a state only a few months longer than was necessary to obtain a divorce, never *intended* to establish a domicile in that state. Thus the following cases cited in the opinion of the court below are not applicable here: *Commonwealth ex rel. McVay v. McVay,* supra, 383 Pa. 70, 188 A. 2d 144 (1955) where the party left the divorcing state within nine months after obtaining the divorce: *Commonwealth ex rel. Meth*

*v. Meth,* supra, 156 Pa. Superior Ct. 632, 41 A. 2d 752 (1945), where the party left the divorcing state within four months of the decree: *Commonwealth ex rel. Esenwein v. Esenwein,* supra, 348 Pa. 455, 35 A. 2d 355 (1944) where the party left "immediately"; *Commonwealth ex rel. Barker v. Barker,* 160 Pa. Superior Ct. 263, 50 A. 2d 739 (1947) where the party left within four months; *Commonwealth ex rel. DeGosz v. De-Gosz,* 161 Pa. Superior Ct. 286, 54 A. 2d 55 (1947) where the party left within one year; *Commonwealth ex rel. Harmon v. Harmon,* supra, 172 Pa. Superior Ct. 459, 94 A. 2d 181 (1953) where the party left within two months; *Commonwealth ex rel. Davidsen v. Davidsen,* 175 Pa. Superior Ct. 123, 103 A. 2d 296 (1954) where the party left within two months. See also *Commonwealth ex rel. Phelps v. Phelps,* 154 Pa. Superior Ct. 270, 35 A. 2d 530 (1944) where the party left "immediately afterwards"; *Commonwealth v. Berfield,* 160 Pa. Superior Ct. 438, 51 A. 2d 523 (1947) where the party left within 4½ months; *Melnick v. Melnick,* supra, 154 Pa. Superior Ct. 481, 36 A. 2d 235 (1944) where the party left immediately.

The fact that appellant is now in his third year in Nevada is not conclusive of his intention to remain there, but it is an important element for our consideration. Indeed, our attention has not been called to any case where a divorce decree of a sister state was not recognized, when the evidence shows that the defendant had not left the state where the divorce was granted.

The facts of this case resemble the following cases more closely than the above cases, many of which were cited by the appellee and the court below: *Commonwealth v. Petrosky,* supra, 168 Pa. Superior Ct. 232, 77 A. 2d 647 (1951); *Commonwealth ex rel. McCormack v. McCormack,* supra, 164 Pa. Superior Ct. 553, 67 A.

2d 603 (1949); *Wallace v. Wallace,* supra, 371 Pa. 404, 89 A. 2d 769 (1953); *Commonwealth v. Fierman,* 47 Luzerne Leg. Reg. 290 (1957).

It is our opinion that the appellee has failed to meet her burden, and that the validity of the divorce of Nevada must be recognized in Pennsylvania. We must assume that the appellant had a bona fide domicile in Nevada and not that it was a sham. *Williams v. North Carolina,* supra, 317 U. S. 287, 63 S. Ct. 207 (1942). We cannot guess that the appellant had no intention of remaining in Nevada.

There is approximately $700 due by the appellant on the support order which accumulated prior to the date of his Nevada divorce. The court below properly refused to remit this arrearage.

The order of the court below refusing to vacate the support order as of April 2, 1957 is reversed. The order refusing to remit the arrearage is affirmed as it relates to any arrearage prior to April 2, 1957.

WRIGHT, J., would affirm on the opinion of Judge FLANNERY for the court below.