## Zwalkuski Estate

*Charles B. Pursel* and *Howard A. Berman*, for petitioner.

*Nickolas Piazza*, for respondents.

KREISHER, P. J., July 14, 1970.—This is an appeal under the Register of Wills Act of June 28, 1951, P. L. 638, 20 PS §1840.208, which provides, inter alia: "Any party in interest who is aggrieved by a decree of the register . . . may appeal therefrom to the court within two years of the decree . . ."

Theresa Zwalkuski died September 25, 1965, at the age of 60 years in the home of a son living in Luzerne County. On October 21, 1965, the Register of Wills of Columbia County admitted to probate the will of decedent dated April 6, 1965, and granted letters testamentary to N. B. Piazza, Esq., of Berwick, Pa., the executor therein named.

Appellant contends the estate should be settled in Luzerne County and not in Columbia County.

Section 301 of the said Register of Wills Act, 20 PS §1840.301, provides:

"The will of a decedent domiciled in the Commonwealth at the time of his death shall be probated only before the register of the county where the decedent had his last family or principal residence. If the decedent had no domicile in the Commonwealth, his will may be probated before the register of any county where any of his property is located."

Likewise, section 301, of the Fiduciaries Act of

April 18, 1949, P. L. 512, as amended, 20 PS §320.301, provides:

"Letters testamentary or of administration on the estate of a decedent domiciled in the Commonwealth at the time of his death shall be granted only by the register of the county where the decedent had his last family or principal residence. If the decedent had no such domicile in the Commonwealth, letters testamentary or of administration may be granted by the register of any county wherein property of the estate shall be located and, when granted, shall be exclusive throughout the Commonwealth. If the decedent had no such domicile in the Commonwealth, and had no property located therein, and service of process is to be made in the Commonwealth upon his personal representative as authorized by law, then letters testamentary or of administration on his estate may be granted by the register of any county of the Commonwealth and, when granted, shall be exclusive throughout the Commonwealth."

A hearing was held June 20, 1966, the testimony was transcribed and filed August 17, 1966; however, the case was never ruled for argument until the fall of 1968. On the call of the case, counsel requested permission to submit written briefs and that they be given additional time to prepare same. On November 27, 1968, the court received the brief of appellant's counsel; however, no brief has been received from appellee's counsel to date.

It is our understanding that the only asset of the estate is a dwelling house located on Orange Street in the Borough of Berwick, this county, which is being rented and the taxes have been paid. We also have been informed that appellee's counsel waives the right to file a brief and that the court may proceed to dispose of the matter without further delay.

The Zwalkuski family lived on a farm in Luzerne

County. The father died in 1946 and in 1952 the farm was sold and the mother purchased a house at 301 Mary Street, Berwick, this county. There were seven children who are the beneficiaries under the will and have since established their own homes.

Helen, a daughter, though married, continued to live with her mother, and on January 9, 1963, purchased the home for $10,225 which the mother banked. However, she continued to live with her daughter on Mary Street.

In December 1963, decedent was hospitalized for 32 days at the Wilkes-Barre General Hospital; she then returned to Helen's home. On April 18, 1964, she was again hospitalized at the same institution for seven or eight weeks, during which time a toe was amputated. On June 17th, decedent's leg was amputated at the Geisinger Medical Center in Danville, Pa., and the children were advised their mother would require care during her period of recuperation.

The children met together, at which time it was decided Frank's wife, Arlene, being the only one unemployed would give said care in Frank's house in Luzerne County until Helen "got her home fixed up and would quit work by December," when she could come back to Helen's home on Mary Street, Berwick, where all of her personal items remained except for some bedroom slippers and housecoats which were taken to Arlene's.

Some time thereafter, a son, Tony, became apprehensive about his mother's personal property remaining in Helen's home and this caused some dissension in the family.

In 1959, decedent purchased a dwelling on Orange Street in Berwick which she sold to a son Joseph in 1963, and Joseph reconveyed this property to his mother in 1964. In order to satisfy Tony, decedent's furniture and other personal belongings were moved

from Mary Street to the Orange Street home because decedent "liked the house; it was near the corner bus stop," so she would move there when she recovered.

In August, 1964, some of decedent's furniture was divided among the children and some of it was sold at the Orange Street address. However, decedent retained title to the property and this comprises the bulk of the estate.

Decedent would return to Helen's home on weekends and vacation periods when Helen was not at work. Decedent kept her clothing and cash box at Helen's, where she received her mail and paid her bills.

Decedent's condition worsened and she died September 25, 1965, while still being cared for by Arlene in Frank's home in Luzerne County, so her intention to return to Berwick never materialized.

In Loudenslager Will, 430 Pa. 33, it is stated, beginning on page 37:

". . . Under our case law, 'residence,' in the statutory sense, is synonymous with 'domicile' (Obici Estate, 373 Pa. 567 . . .). 'The domicile of a person is the place where he has voluntarily fixed his habitation with a present intention to make it either his permanent home or his home for the indefinite future:': Publicker Estate, 385 Pa. 403 . . . See also: Dorrance's Estate, 309 Pa. 151, . . . We further said in Publicker, supra: 'To effect a change of domicile there must be a concurrence of the following factors: (1) physical presence in the place where domicile is alleged to have been acquired, and (2) an intention to make it his home without any fixed or certain purpose to return to his former place of abode . . .'

"In determining a person's domicile, the language of the United States Supreme Court, almost a century ago in Mitchell v. United States, 21 Wallace 350, is

most appropriate: 'A domicile once acquired is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation . . . Mere absence from a fixed home, however long continued, cannot work the change [of domicile]. There must be the animus to change the prior domicile for another. Until the new one is acquired the old one remains. These principles are axiomatic in the law upon the subject.' "

Testator Loudenslager lived in Philadelphia for 83 years when he became physically handicapped by illness. On July 8th, he was taken to the home of his daughter in Montgomery County where he remained until July 13th when he was removed to a nursing home in Philadelphia. He was returned to his daughter's home on July 16th and six days later he was admitted to a Philadelphia hospital wherein he was a patient until he died on July 27th. A will dated July 13th was admitted for probate in Montgomery County and on appeal to the jurisdiction, it was held the burden is on the proponent of the will to prove the jurisdiction of the register of wills and upon the foregoing facts Philadelphia County had jurisdiction.

The only difference between the above-cited case and the case before the court is the time element, plus a complete reversal of the parties.

Appellant cited the above case in their brief in support of their contention; however, their position is similar to that of the daughter in Montgomery County while the position of the proponent in the instant case is similar to appellant in Philadelphia County except for the time element.

Appellant lays great stress on the one-year, three-month period in the instant case, a postal record showing decedent's address as Berwick R.D. and a bank record with a similar notation.

However, appellant's witness did not deny the temporary nature of decedent's sojourn into Luzerne County with regard to clothing, payment of bills, hopes of recovery and return to Berwick by decedent. The testimony clearly indicates the arrangement was a matter of convenience and necessity with no intention on decedent's part to remain permanently away from her actual residence in Berwick, this county.

The evidence in this case is, in our opinion, more than sufficient to meet the burden of showing decedent had no intention at any time to make her son Frank's home her permanent home or for an indefinite future time. All of the evidence points to her close tie with her Berwick home and a fully formed plan or intention to return as soon as her physical condition warranted the change; however, unfortunately, she died before she was able to carry out her intentions: Levin Estate (No. 2). 30 D. & C. 2d 203.

### ORDER OF COURT

And now, July 14, 1970, it is ordered and decreed that the appeal in the above-captioned matter be and the same is hereby dismissed. Costs on the Estate. Exception noted.